RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0448p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PATRICIA JACKSON,

        *Plaintiff-Appellee,*

  *v.*

No. 04-2289

ANDREAS SCHULTZ; RICHARD CADOURA,

        *Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-73563—Paul D. Borman, District Judge.

Argued: September 21, 2005

Decided and Filed: November 18, 2005

Before: COLE and ROGERS, Circuit Judges; BECKWITH, Chief District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Jeffrey Stewart Jones, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellants. **ON BRIEF:** Jeffrey Stewart Jones, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellants.

_____

**OPINION**

_____

ROGERS, Circuit Judge. This civil rights lawsuit arises out of the tragic death of plaintiff Patricia Jackson's son Alter Keith Jackson ("decedent"). The complaint alleges that defendants Andreas Shultz and Richard Cadoura, Detroit Fire Department EMTs, watched decedent die in the back of an ambulance without providing any medical care. Shultz and Cadoura ("EMTs") moved for dismissal on the grounds that they were entitled to qualified immunity. The district court held that the EMTs were not entitled to qualified immunity because, accepting plaintiff's allegations, they violated decedent's clearly established constitutional right to receive competent medical care while in custody. This appeal ensued. Decedent's clearly established constitutional rights were not violated because the decedent was never in custody and the EMTs did nothing to increase the risk of harm to decedent. The EMTs are entitled to qualified immunity. We therefore REVERSE and DISMISS.

---

[*]The Honorable Sandra Beckwith, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

1

## I.      Background

According to Jackson's complaint, the decedent sustained gunshot wounds in a bar on September 16, 2000. The bullet that ended decedent's life was fired "indiscriminately" by another bar patron. In response to the shooting, someone called 911. The Detroit Fire Department dispatched the EMTs to the scene. Another team of Detroit Fire Department EMTs was also dispatched (the "non-party EMTs"). When the EMTs arrived on the scene decedent was alive but bleeding profusely.

The EMTs placed the decedent in their ambulance, where they later watched him die. Jackson alleges that Fire Department policy and proper procedure mandates the use of life support in this situation. The EMTs did not administer life support. Fire Department policy also required the EMTs to transport decedent to a trauma center. The EMTs failed to transport decedent even though a center was located less then two miles from the scene. Decedent died while in the back of the ambulance.

On September 16, 2003, Plaintiff Patricia Jackson filed this action in the United States District Court for the Eastern District of Michigan.[1] The suit alleged that the EMTs violated decedent's substantive due process rights by providing him no medical care while he was in custody. Jackson further alleges that the EMTs' conduct amounts to a state created danger, which triggers a right to medical care. Jackson alleges that by placing decedent in the back of the ambulance, he was left in a worse position than if the EMTs had simply left him on the sidewalk bleeding. Jackson alleges that if decedent had simply been left on the street, the non-party EMTs might have provided life support and transportation to a trauma center. Jackson does not allege that any private aid was attempted or that there was any meaningful private aid on the scene.

On April 1, 2004, the EMTs moved for dismissal under Fed. R. Civ. P. 12(b)(6) on the grounds of claim preclusion. Jackson's response argued that previous Michigan decisions concerning the same events could not have claim-preclusive effect because the state court dismissed Jackson's complaint without prejudice. On September 3, 2004, the district court denied the motion to dismiss based on claim preclusion. Claim preclusion is not an issue raised on appeal.

In reply to Jackson's response, the EMTs added a second ground to their 12(b)(6) motion, arguing that they were entitled to qualified immunity and that the case should therefore be dismissed. The EMTs argued that (1) they did not violate decedent's constitutional rights, and (2) even if they did, such rights were not clearly established.

Jackson responded to this new ground for dismissal by contending that the EMTs' conduct violated decedent's clearly established substantive due process rights. Jackson argued that the due process clause required the state to render competent medical care to decedent because he was (1) in state custody, and (2) in a situation of state created danger. To support this argument, Jackson refers to *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989), and its progeny. On September 3, 2004, the district court denied the EMTs' motion to dismiss based on qualified immunity. The court held that Jackson alleged the violation of a clearly established constitutional right. The EMTs timely appealed.

The court notes that Jackson's appellate advocacy was, quite literally, lacking in all respects. Jackson did not file a brief, respond to three show cause orders requesting that she file a brief, return calls from the clerk, or appear at oral argument.

---

[1]Jackson previously pursued litigation in Michigan state courts. Those claims were dismissed without prejudice.

## II.        Jurisdiction and Standard of Review

The denial of a motion to dismiss is generally considered interlocutory and not appealable. But a denial based on a determination that the defendant is not entitled to qualified immunity may be reviewed upon appeal. *See Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 602 (6th Cir. 2005).

This court can resolve the qualified immunity inquiry based on a pre-answer motion to dismiss. Qualified immunity is an affirmative defense, and a plaintiff does not need to anticipate it to state a claim. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165-68 (1993) (declining to impose a heightened pleading standard for claims made pursuant to 42 U.S.C. § 1983). But once the EMTs raise qualified immunity, Jackson must plead the violation of a clearly established constitutional right. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Despite liberal notice pleading standards, this circuit permits a reviewing court to dismiss under Fed. R. Civ. P. 12(b)(6) based on qualified immunity. *See Dominique v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987). This court may dismiss Jackson's complaint only if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings. *See Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000).

The pleadings in this case are not ambiguous. If a complaint itself is ambiguous in its factual allegations, and if that ambiguity results in a determination that under one set of facts the plaintiff's constitutional rights were violated and in another they were not, then presumably the district court can so hold, and the matter may then either be appealed or proceed to the discovery stage. After discovery it might be possible to resolve the issue by a motion for summary judgment. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). But, this case is appropriate for dismissal because there is no factual ambiguity in Jackson's allegations.

This court reviews the decision of the district court de novo. *Beard*, 402 F.3d at 602. Thus, remand is not necessary. This court is in as good a position to decide the legal questions at issue as the trial court. *Mitchell*, 472 U.S. at 530. The legal questions in this case have been directly addressed by the trial court following adequate briefing before that court.

## III.        No Constitutional Violation

It is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need. *DeShaney*, 489 U.S. at 196. The two applicable exceptions to this general rule are (1) the custody exception and (2) the state-created danger exception. *Id.* at 199-201. Neither of these exceptions applies under any set of facts that could be proven consistent with Jackson's allegations.

## A.        The Custody Exception: the decedent was never in custody

The "custody exception" does not apply because the decedent was never in custody. The "custody exception" triggers a constitutional duty to provide adequate medical care to incarcerated prisoners, those involuntarily committed to mental institutions, foster children, pre-trial detainees, and those under "other similar restraint of personal liberty." *See DeShaney*, 489 U.S. at 200; *see also Stemler v. City of Florence*, 126 F.3d 856, 867-68 (6th Cir. 1997). As the district court noted, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety." *DeShaney*, 489 U.S. at 199-200. The overarching prerequisite for custody is an affirmative act by the state that restrains the ability of an individual to act on his own behalf. *Stemler*, 126 F.3d at 868.

The district court improperly held that moving an unconscious patient into an ambulance is custody. This court's precedent has made clear that *DeShaney*'s concept of custody does not extend this far. This court has never held that one merely placed in an ambulance is in custody. *See, e.g.*, *Stemler*, 126 F.3d at 867-68. The proper custody inquiry is whether the EMTs engaged in a "restraint of personal liberty" similar to the restraints mentioned in *DeShaney*, 489 U.S. at 200.

The EMTs did not engage in a "restraint of personal liberty" similar to the restraints mentioned in *DeShaney*, 489 U.S. at 200. The restraints of personal liberty mentioned in *DeShaney*, 489 U.S. at 200, all require some state action that applies force (or the threat of force) and show of authority made with the intent of acquiring physical control. Because the decedent was unconscious, the proper custody inquiry focuses on what the EMTs did to restrain him. *See Stemler*, 126 F.3d at 868. This is not to say that an unconscious person cannot be taken into custody. For example, custody might be found where an unconscious drunk is handcuffed and transported to jail. *See Ringuette v. City of Fall River*, 888 F. Supp. 258, 266-68 (D. Mass. 1995). In the instant case, the EMTs did nothing to restrain decedent. The EMTs did not cause decedent to be shot nor did they render him unconscious. There is no allegation that the EMTs restrained or handcuffed the decedent. There is no allegation that the decedent was not free to leave the ambulance or be removed from the ambulance. Decedent's liberty was "constrained" by his incapacity, and his incapacity was in no way caused by the defendants. In sum, no set of facts consistent with the allegations shows that the EMTs did anything to restrain the decedent's liberty. Thus, no set of facts consistent with the allegations supports a finding that the EMTs took decedent into custody. Based on the facts alleged, there is no constitutional violation under the custody exception.

## B.      State-Created Danger: the EMTs did not increase the risk that decedent would be exposed to private harms.

Even liberally construing Jackson's allegations, she has also not pled sufficient facts to show a constitutional violation based on the "stated-created danger" exception. To show a state-created danger, Jackson must plead (1) an affirmative act by the EMTs that creates or increases a risk that the decedent would be exposed to "private acts of violence," (2) a special danger to the decedent such that the EMTs' acts placed the decedent specifically at risk, as distinguished from a risk that affects the public at large, and (3) that the EMTs knew or should have known that their actions specifically endangered the decedent. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). Because the first prong is not met it is unnecessary to consider the second and third prongs.

Jackson does not specify a theory of state-created danger. A liberal construction of Jackson's allegations permits two possible theories. First, the EMTs moved the decedent to a more dangerous area. Second, the EMTs moved the decedent to a place where it was less likely another state actor or private person would render aid. No set of facts consistent with the allegations supports a constitutional violation under either of these theories.

Risk of "private acts of violence" was not more probable inside the ambulance than outside the ambulance. Before being moved into the ambulance, the decedent was at a bar where a patron "indiscriminately" fired his weapon numerous times at bar patrons. After being moved, the decedent was in the back of an ambulance. No set of facts consistent with the allegations could support a finding that the risk of violence by a private party was more probable in the inside of the ambulance versus the scene of a bar where decedent was actually shot. Thus, the EMTs' action did not increase the risk that the decedent would be exposed to private acts of violence.

Jackson also does not state a constitutional claim that the EMTs hindered third party aid. Jackson cannot state a constitutional claim based on cutting off state aid because state actors do not have a general duty to render aid. *See DeShaney*, 489 U.S. at 196. But a constitutional claim may be premised on state action "cutting off" private sources of rescue without providing an adequate

alternative. *Beck v. Hiak*, 377 F.3d 624, 643 (6th Cir. 2004). For example, dictum in *Beck* suggests that a valid constitutional claim might be made when police threatened to arrest private search and rescue divers at the scene of a drowning, and then failed to provide adequate state divers. *Id.* at 629, 643. Jackson alleges only one relevant fact to this inquiry: the EMTs put decedent in an ambulance. The EMTs did not discourage others from entering the ambulance. All evidence indicates decedent was free to leave (or be removed from) the ambulance. Furthermore, there is no evidence that any private rescue was available or attempted. No set of facts consistent with the allegations shows that the EMTs interfered with private aid. Thus, Jackson does not allege sufficient facts to support a claim for a constitutional violation based on cutting off private aid.

In sum, Jackson does not allege sufficient facts to support a constitutional violation.

## IV.    No "Clearly Established" Constitutional Violation

Assuming that Jackson stated a viable constitutional claim, such a claim is not based on clearly established law. To defeat qualified immunity, Jackson must show a violation of a constitutional right, and that the constitutional right was clearly established. *Brosseau v. Haugen*, 543 U.S. 194, ___, 125 S. Ct. 596, 599 (2004). As noted above, there are no cases finding a constitutional right to medical care under these exact (or even vaguely similar) circumstances. Even if a constitutional violation were established, *Brosseau* compels a finding that such a violation is not clearly established.

## V.    Conclusion

For the foregoing reasons, the district court's order of September 3, 2004, is REVERSED and REMANDED with instruction to the district court to grant the motion to DISMISS the action against Defendants Shultz and Cadoura on the basis of qualified immunity.