RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0438p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GENELL ROBERTS; SANDRA DALE; and WILLIAM LESLIE,

                              *Plaintiffs-Appellants,*

        *v.*

GEORGE WARD, individually and in his capacity as Commissioner of Parks, Commerce Cabinet of the Commonwealth of Kentucky; COMMONWEALTH OF KENTUCKY; and OTHER UNKNOWN OFFICIALS OF KENTUCKY,

                              *Defendants-Appellees.*

No. 05-6305

---

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 04-00262—Danny C. Reeves, District Judge.

Argued: July 20, 2006

Decided and Filed:  November 27, 2006

Before:  MARTIN and SUTTON, Circuit Judges; JORDAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Phillip J. Shepherd, LAW OFFICE OF PHILLIP SHEPHERD, Frankfort, Kentucky, for Appellants.  Robert L. Roark, WALTHER, ROARK, GAY & TODD, Lexington, Kentucky, for Appellees. **ON BRIEF:** Phillip J. Shepherd, LAW OFFICE OF PHILLIP SHEPHERD, Frankfort, Kentucky, Ned B. Pillersdorf, PILLERSDORF, DeROSSETT & LANE, Prestonsburg, Kentucky, for Appellants.  Robert L. Roark, WALTHER, ROARK, GAY & TODD, Lexington, Kentucky, for Appellees.

---

[*] The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

————————————

**OPINION**

————————————

BOYCE F. MARTIN, JR., Circuit Judge.  Plaintiffs Genell Roberts, Sandra Dale, and William Leslie were employees of the Kentucky Department of Parks.  They were terminated from employment in May 2004 for failing to comply with the Department's dress code.  They subsequently filed suit, alleging violations of their First Amendment, equal protection, and procedural and substantive due process rights, as well as state statutes.  The district court granted a partial motion to dismiss for failure to state a claim in favor of defendants, and later dismissed the remaining claims pursuant to the defendant's motion for summary judgment.  The plaintiffs now appeal these dismissals.  For the following reasons, we **AFFIRM** the district court.

I.

The district court set forth the following relevant facts in its opinion granting summary judgment:

> The Plaintiffs were seasonal workers employed to perform maintenance services at the General Burnside State Park during the summer months. Sandra Dale, a six-summer veteran of the park, as well as William Leslie and Genell Roberts, both four-summer veterans, maintained "spotless work records." (Amended Compl. at ¶¶ 3-4.) Dale, in particular, "received several positive commendations" for her work.
>
> On May 18, 2004, Director of Parks George Ward sent an e-mail to all managers of Kentucky state parks which set into motion the events giving rise to this action. The e-mail provided, in relevant part, that
>
>> we are working hard to eliminate the deficit associated with operating the State Parks. . . . [I]t is may [sic] small details that we must pay attention to in order to attract tourists to our Parks and provide them outstanding experience that will make them want to come back and visit with us.
>>
>> To this end, providing outstanding customer service in a professional atmosphere creates a very positive first impression of us to the customer. Therefore, we have implemented a new professional appearance policy that ALL employees must adhere to at each Park location. Items addressed in the policy include hair length for men above the collar, no visible body piercings with exception of in the ear lobes for women only, no visible tattoos (long sleeves, pants, bandages, or wrist bands are approved ways to cover), and the proper wearing of the prescribed uniform in each department, which in most cases includes tucking in shirts and blouses. Please be advised that there are no exceptions to this policy. . . . Failure to comply with the new policy is clearly insubordination.
>>
>> It is your role as park managers to ensure that ALL employees comply with Park policies. Any regular merit employee that fails to comply with the new policy should be issued a written warning for insubordination. If they continue to fail to comply they should be placed on suspension. Of course, the final step, should they continue to not comply would be termination. Any interim employee that fails

> to comply should be given the choice to comply or be sent home. After the initial warning, any interim employee that is observed to be not complying is to be terminated.

(Pls.' Resp., Ex. B.) In a followup e-mail, Ward reiterated that "if interim workers refuse to tuck in their shirts, you may not allow them to work. Give them the choice to tuck in their shirt or go home." (Compl., Ex. B.)

These emails were Ward's interpretation and implementation of the Department of Parks ("Parks") Policy 01-03 (promulgated in 2002, prior to Ward's appointment), which provides that "[s]ince employees are in daily contact with guests, vendors, and the general public, all employees are expected to exhibit appropriate conduct and maintain a professional, business-like appearance." *Id.*, Ex. A. Further, "[s]upervisors and managers are expected to communicate and monitor standards of employee conduct and appearance that will provide a professional, positive, and safe environment for employees, guests, and vendors. . . . Due to business needs, many employees may be required to wear furnished uniforms or conform to appropriate levels of dress, grooming, and hygiene standards for their work situation." *Id.* Finally, "[v]isible tattoos and body piercings that are offensive or not consistent with the mission of the Department of Parks shall be deemed to be violations of sections A and B above." *Id.*

Another policy adopted at the same time as the "shirt tucking" policy prohibited Park employees from swimming in the pool or staying as overnight guests at the park at which they worked. (Compl., Ex. C.) The stated reason for the policy was to ensure "separation between employees and overnight guests" and to avoid claims of sexual harassment by Park employees. *Id.*

On May 19, 2004, the Plaintiffs were discharged for failing to tuck in their shirts. (Pls.' Resp. at 4.) Leslie also claims he was discharged because he has a "USN" tattoo on his arm, which commemorates his service in the United States Navy. *Id.* Several days after their termination, the Plaintiffs' supervisor, John Troxell, resigned in protest. The Plaintiffs brought suit, challenging the appearance policy and the "overnight stay" policy. D. Ct. Op., Aug. 3, 2005, at 1-3 (granting summary judgment to defendants on plaintiffs' remaining claims).

On September 22, 2004, the district court granted the Defendants' partial motion to dismiss. D. Ct. Op., Sept. 22, 2004, at 20. The district court enumerated seven claims that were made out in the complaint: (1) wrongful discharge under state law; (2) violation of Section Two of the Constitution of the Commonwealth of Kentucky; (3) violation of the First Amendment of the United States Constitution; (4) violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution; (5) violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (6) violation of KRS § 13A (challenging the manner by which the regulation was implemented); and (7) violation of the Kentucky Civil Rights Act, KRS § 344.120. *Id.* at 6. In granting the Defendants' motion, the district court dismissed all claims seeking monetary damages based on Eleventh Amendment immunity, *id.* at 17, all claims relating to the "overnight stay" rule, *id.* at 19, and all claims brought under the Kentucky Civil Rights Act, *id.* at 18. The district court also dismissed Parks Commissioner Ward as a defendant on the basis of qualified immunity. *Id.* at 15.

On August 3, 2005, the district court granted Defendants' motion for summary judgment, dismissing the remaining claims. These included claims seeking only the equitable relief of reinstatement of employment based on First Amendment, due process, and equal protection violations, and violation of Section Two of the Kentucky Constitution. D. Ct. Op., Aug. 3, 2005, at 12.

The plaintiffs now raise seven issues for appeal: (1) Commissioner Ward was not entitled to qualified immunity; (2) the Commonwealth of Kentucky should not have been granted immunity under the Eleventh Amendment; (3) the plaintiffs had standing to raise their claim under the Kentucky Civil Rights Act, KRS § 344.120; (4) summary judgment dismissing their First Amendment claim was inappropriate; (5) summary judgment should not have been granted with regard to their due process claim; (6) their equal protection claim should also have survived summary judgment; and (7) emails from Commissioner Ward created due process protections that the Parks Department subsequently did not follow.

In their brief, the plaintiffs uniformly describe the separate dismissals of their several claims as summary judgment dispositions, neglecting the fact that some of their claims were dismissed on the pleadings. Because the district court addressed the various claims in separate orders, one addressing the pleadings and the second at the summary judgment stage, we must evaluate each claim in light of the procedural posture under which it was dismissed.

II.

We first address plaintiffs' claims that were dismissed on the pleadings. We review de novo motions to dismiss granted under Fed. R. Civ. P. 12(b)(6). *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). "When ruling on a defendant's motion to dismiss on the pleadings, a district court 'must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.* (quoting *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)).

### A.  Qualified Immunity for Commissioner Ward

The district court ruled on the pleadings that Commissioner Ward was entitled to qualified immunity and dismissed him as a defendant.  Once a defendant raises the defense of qualified immunity, a plaintiff "must plead the violation of a clearly established constitutional right." *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005).  Dismissal based on qualified immunity is only appropriate if "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Id*.

The plaintiffs identify several clearly established constitutional rights that they claim Ward violated, preventing him from being entitled to qualified immunity.  They claim that the prohibition of tattoos and the requirement that park workers keep their shirts tucked in violates the First Amendment's protection of free speech.  They also contend that the imposition, without sufficient notice, of the dress code policies that they claim are vague and arbitrary amounts to a due process violation under the Fourteenth Amendment. Additionally, the plaintiffs contend that the requirement that they tuck their shirts in while working in the outdoor heat violated the Equal Protection Clause of the Fourteenth Amendment due to health and safety implications.

### *1.  First Amendment*

The district court found that the Parks Department's appearance policy did not implicate a clearly established First Amendment right because it did not involve a matter of public concern, and thus is not protected speech for a government employee.  As the district court recognized, the Supreme Court has acknowledged that when acting as an employer, a government entity has far broader discretion to regulate the speech of its employees than it does as a sovereign regulating the

speech of its citizens.[1] D. Ct. Op., Sept. 22, 2004, at 8 (citing *Waters v. Churchill*, 511 U.S. 661, 671 (1994)).  For a government employee's speech to be protected under the First Amendment, it must, as a threshold matter, involve a matter of public concern.  *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006).  The district court ruled that neither the plaintiffs' refusal to tuck in their shirts, nor Leslie's display of his Navy tattoo, involves matters of public concern, and thus was not protected.

The Supreme Court appears to have identified two lines of cases under which a state employer's limitations upon the speech of its employees can violate the First Amendment.  *See City of San Diego v. Roe*, 543 U.S. 77, 90 (2004).  The first line of cases involves instances where a public employee speaks out about some functioning of the branch of government for which he or she works, a matter on which he or she "[is] uniquely qualified to comment" by virtue of their job status.  *Id*.  Because constructive criticism of the government can be a legitimate matter of concern to its citizens, these types of statements can be protected against retaliatory conduct from supervisors if they do not primarily involve comments about employment that are personal in nature.  *Id*. at 83 ("a public employee's speech is entitled to *Pickering* [*v. Board of Education*, 391 U.S. 563 (1968)] balancing only when the employee speaks 'as a citizen upon matters of public concern' rather than 'as an employee upon matters only of personal interest.'" (quoting *Connick v. Myers*, 461 U.S. 138 (1983))).  Given that the statements go to the functioning of the government entity in question, however, the government has some added leeway in limiting such speech due to its status as the employer.  *See United States v. National Treasury Employees Union, et al.,* 513 U.S. 454, 466 (1995) (hereinafter *NTEU*).

The other line of cases involves government regulation of statements that are unrelated to the employee's job.  *See id.; City of San Diego*, 543 U.S. at 90; *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).  Where the speech is unrelated to the job of the employee and involves a matter of public concern, it appears to be entitled to greater protection, as it is less likely to disrupt the efficient functioning of the workplace.  *See NTEU*, 513 U.S. at 466.  Both types of cases are based on the principle that the speech must involve a matter of public concern to be protected, and that the government must have "an adequate justification for treating the employee differently from any other member of the general public."  *Garcetti*, 126 S.Ct. at 1958.  This balancing test "reflects the importance of the relationship between the speaker's expressions and employment."  *Id*.  The focus of the balancing test, first articulated in *Pickering v. Board of Education*, 391 U.S. 563 (1968), is whether the restrictions imposed on the speech of a government employee are "directed at speech that has some potential to affect the entity's operations."  *Garcetti*, 126 S.Ct. at 1958.

The plaintiffs provide little argument to rebut the determination that untucked shirts do not amount to speech on a matter of public concern.  There is no suggestion, for example, that they were untucking their shirts to express their opinion on some political question.  Rather, they emphasize that the rule was arbitrary and unreasonable, and that they kept their shirts untucked because they were uncomfortable when they tucked them in.  The state, on the other hand, justifies the policy as a regulation of their employees' appearance.  Whether or not the policy was somehow unfair as applied to the plaintiffs, as they argue here, there is no basis for questioning the district court's determination that it did not involve speech on a matter of public concern, and thus does not implicate any clearly established First Amendment rights.

Leslie's "USN" tattoo, on the other hand, presents a potentially closer question.  The district court summarily determined that the tattoo also did not involve a matter of public concern.  Leslie

---

[1] In the district court, the plaintiffs erroneously relied upon cases involving the regulation of free speech for public school students, which the district court noted are entirely distinguishable from cases involving the speech of government employees given the state's interest in efficient administration.  Despite this ruling and obvious distinction, the plaintiffs rely on the same cases here.

contends, however, that the tattoo expresses his "*support*, loyalty and affection for the U.S. Navy." Viewing the significance Leslie attributes to the tattoo in this light, support for the military seems to come much closer to involving a matter of public concern than do the untucked shirts. We have held that the subjective intent of the speaker is a relevant, albeit not controlling factor in whether the speech is a matter of public concern. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 894 (6th Cir. 2003). Further, Leslie's support for the military is unrelated to his job as a state park employee. The state argues that Leslie's tattoo can only be said to reflect his personal service in the Navy, and given its form as a tattoo, involves a matter of personal taste and decoration, and thus "cannot rise to the level of speech on a matter of legitimate public concern." Appellee's Br. at 11.

For qualified immunity purposes, because some dress code limitations are permissible, we find that an individual's decision to display a tattoo such as Leslie's is not a clearly established right.

### 2. Due Process

The plaintiffs claim that Ward infringed on their clearly established due process rights by unilaterally changing the dress code policy, presumably through his May 17, 2004 email. They claim that although the email purported to implement an existing policy, it in fact represented a new policy altogether. They argue that this implementation did not comply with chapter 13A of the Kentucky Revised Statutes, which requires the formal administrative procedures of public notice and hearings.

The district court dismissed the plaintiffs' due process claims because they had not identified any property or liberty interest that would entitle them to due process protections prior to the change in policy. Although an employee can obtain a property interest in continued employment where state law or the terms of his agreement with the state creates an expectation of continued employment, where no such expectation is created there is no property interest that would implicate due process protections. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972). Recognizing this hurdle, the plaintiffs claim that despite the lack of any applicable tenure provision, they have "de facto tenure" under *Perry v. Sinderman*, 408 U.S. 593 (1972). Under *Perry*, a plaintiff can show de facto tenure where the circumstances of his service and the practices of his employer create an expectation of continued employment.

The district court rejected the plaintiffs' de facto tenure claim, reasoning that where a state employer provides tenure for some employees, as Kentucky does, other employees are not entitled to de facto tenure when they are excluded from the tenure system. Because Kentucky provides some employees with a merit system that formally provides for tenured employment, and yet plaintiffs were specifically excluded from it, the district court found that they cannot qualify for tenure under our decision in *Edinger v. Bd. of Regents of Morehead State Univ.*, 906 F.2d 1136 (6th Cir. 1990).

*Edinger* also states that even if a tenure system exists, where the circumstances surrounding the employment relationship "lead[] the [non-tenured] employee to reasonably believe his employment is permanent, such actions may create a protected property interest in continued employment." *Id*. at 1140. Even so, the plaintiffs point to nothing other than their continued employment to establish their de facto tenure. Under *Roth*, their continued employment is not enough to create a property interest.

Therefore, we find no violation of the plaintiffs' due process rights, and we affirm the district court's grant of qualified immunity to Commissioner Ward on this ground.

### 3. Equal Protection

The plaintiffs claim that the revised dress code violated their clearly established equal protection rights under the Fourteenth Amendment, as the dress code had a much more onerous

impact on manual laborers who worked outside in the summer, including themselves, than it did on office workers. The district court determined that because the policy applied to all park workers, it did not raise any equal protection concerns. Although a facially neutral law can be challenged under the theory of "disparate impact," the inquiry for such a challenge focuses on whether it targets a group that has historically been the victim of discrimination or otherwise reflects invidious discrimination. *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 273 (1979). The plaintiffs present no argument on appeal that would establish an equal protection violation.

Because the plaintiffs' allegations do not implicate any clearly established constitutional rights, we affirm the district court's grant of qualified immunity to Commissioner Ward.

### B.  Eleventh Amendment Immunity and Sovereign Immunity

The plaintiffs appeal the grant of Eleventh Amendment and sovereign immunity to the state, arguing that under the exception to the Eleventh Amendment recognized in *Ex Parte Young*, 209 U.S. 123 (1908), their claims for prospective, injunctive relief are not barred by the Eleventh Amendment. They acknowledge that their money damages claim can be barred. In its opinion granting defendants' partial motion to dismiss, however, the district court only held that the money damages claims were barred, not the claims for injunctive relief. Because there appears to be no actual disagreement among the parties regarding the Eleventh Amendment's scope, we need not address this issue.

### C.  Standing to Raise a Claim Under KRS § 344.120

The plaintiffs argue on appeal that they have standing to make a claim under KRS § 344.120, the Kentucky Civil Rights Act, based on the employer's policy that prohibited them from staying in the park overnight or swimming in the pools. The district court did not dismiss this claim on the basis of standing, however. Rather, it ruled that the Kentucky Civil Rights Act prohibits discrimination in the provision of public accommodations on the basis of disability, race, color, religion, or national origin, and the plaintiffs have not alleged that any such discrimination was involved in the overnight stay policy. Neither have the plaintiffs described any relevant claim under the Kentucky Civil Rights Act in their appellate brief.

Although the district court addressed the question of standing separately after ruling that the plaintiffs failed to state a claim under the Kentucky Civil Rights Act, it did so because the plaintiffs also challenged the overnight stay policy under Article 2 of the state constitution. D. Ct. Op., Sept. 22, 2004, at 18 n. 5. On appeal, however, the plaintiffs have only argued that they have standing under the Kentucky Civil Rights Act, and have not addressed the state constitutional claim. Because they do not have a cognizable claim under the Kentucky Civil Rights Act, it is unnecessary for us to engage in a standing inquiry here.

### III.

After ruling on the pleadings that Commissioner Ward was entitled to qualified immunity and that any money damages against the state were barred under the Eleventh Amendment, the district court allowed the plaintiffs' case to continue insofar as they sought the injunctive relief of reinstatement on the basis of their constitutional claims, but the district court subsequently granted summary judgment for defendants and dismissed these claims as well. We review a district court's grant of summary judgment de novo, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56). Weighing of the evidence or making credibility determinations are prohibited at summary judgment — rather, all facts must be viewed in the light most favorable to the non-moving party. *Id.*

## A.  First Amendment Claim

The plaintiffs tweak their argument here somewhat, claiming that they kept their shirts untucked in protest of the dress code. This variation of their argument does not make wearing untucked shirts a matter of public concern, rather than a personal statement about a condition of their employment, as is required to state a First Amendment claim challenging a condition of public employment. Thus, under the precedent discussed above, we find that the district court correctly dismissed the free speech claim as to the plaintiffs' wearing of untucked shirts.

Leslie's free speech claim regarding his "USN" tattoo comes much closer to amounting to a matter of public concern, taking at face value his contention that it is intended to show support for the military. Whether Leslie's tattoo is considered speech that is a matter of public concern may turn on whether the speech is generic in nature, or whether it reflects an in-depth attempt to contribute to public discourse. *Compare Zalewska v. Cty. of Sullivan*, 316 F.3d 314, 319 (2d Cir. 2003) (holding in a case involving a dress code for public employees that an employee's wearing of a skirt did not constitute protectable speech because it did not demonstrate "an intent to convey a 'particularized message' along with a great likelihood that the message will be understood by those viewing it") *with Rankin v. McPherson*, 483 U.S. 378, 384-85 (1987) (holding that an offhanded comment about the assassination attempt on President Reagan, given its significance in the public discourse, was considered a matter of public concern).

However, because Leslie's refusal to comply with the dress code provided an independent basis for his dismissal, we need not address the closer question of the First Amendment protection of his tattoo.

## B.  Due Process and Equal Protection Claims

As discussed above, the plaintiffs were not entitled to tenure or de facto tenure, and had no property interest in their positions. As a result, they have no due process claim that they were entitled to notice or a hearing before Commissioner Ward changed the dress code or modified the enforcement of the pre-existing dress code. We also reject the plaintiffs' equal protection claim, because as discussed above, the dress code was facially neutral, and they have not made any showing of disparate impact.

## C.  Due Process Based on Ward's Email

Finally, the plaintiffs contend that Ward's email itself created due process rights that the Parks Department subsequently violated. Ward's email said that park employees "should be given a choice to comply [with the new dress code] or be sent home. After the initial warning, any interim employee that is observed to be not complying is to be terminated." Plaintiffs contend that they were deprived of the procedural right of a warning, created by the email, when they were terminated without warning.

It does not appear that this claim was presented to the district court, as it is not discussed in the plaintiffs' opposition brief to the defendants' summary judgment motion. Further, the plaintiffs do not state what protectable property interest would distinguish this claim from the plaintiffs' other due process claim. Finally, the record does not support the argument that they were not warned, as it seems clear that instead the plaintiffs (and their supervisor) made clear their intention not to

comply with the policy.[2]  For these reasons, we find that the plaintiffs have failed to allege a viable due process claim.

IV.

For the foregoing reasons, we **AFFIRM** the district court.

---

[2] For example, a memo from their supervisor states that "three of them . . . have pretty much refused [and] I believe the fourth will follow suit."  Further, Leslie testified in his deposition that he refused to comply with the policy. Plaintiffs also admit as much in their brief.  Appellant's Br. at 10 (stating that plaintiffs "refused to comply with the aforementioned unlawful policies that required that their shirts be tucked in.").