RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0026p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAMES CARVER, Administrator of the estate of
DAVID ALLEN CARVER, deceased,

*Plaintiff-Appellee,*

    No. 06-3230

*v.*

CITY OF CINCINNATI, et al.,

*Defendants-Appellants.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 05-00427—S. Arthur Spiegel, Sr., District Judge.

Argued: October 31, 2006

Decided and Filed: January 18, 2007

Before: SILER, GILMAN, and GRIFFIN, Circuit Judges.

---

## COUNSEL

---

**ARGUED:** Peter J. Stackpole, CITY OF CINCINNATI, Cincinnati, Ohio, for Appellant. Jay P. Cauhorn, ERPENBECK & BLANK, Covington, Kentucky, for Appellee. **ON BRIEF:** Peter J. Stackpole, CITY OF CINCINNATI, Cincinnati, Ohio, for Appellant. Jay P. Cauhorn, ERPENBECK & BLANK, Covington, Kentucky, for Appellee.

    SILER, J., delivered the opinion of the court, in which GRIFFIN, J., joined. GILMAN, J. (p. 5), delivered a separate concurring opinion.

---

## OPINION

---

    SILER, Circuit Judge. Plaintiff James Carver, administrator of the estate of David Carver (Carver), brought an action against the City of Cincinnati, Ohio, and some of its individual police officers and firefighters/emergency medical technicians (EMTs), under 42 U.S.C. § 1983. Carver argued that the officers violated his substantive due process rights under the Fourteenth Amendment. The officers appeal the district court's denial of their motion to dismiss based on qualified immunity. The district court held that the officers were not entitled to qualified immunity because they unreasonably cut off access to medical care for Carver without providing an adequate alternative.

1

Because we conclude that the officers did not violate Carver's constitutional rights, we **REVERSE** and **REMAND**.

## I.  BACKGROUND

In 2005, Cincinnati police officers and EMTs responded to a 911 call for a suspected cardiac arrest at a local apartment.  When they arrived, the EMTs found Sandra Smith-Sandusky dead on the floor.  Carver was lying on a couch in the same room.  The police and EMTs secured the apartment as a crime scene, asked all those present to leave, and took the apartment keys away from a roommate in the apartment.  When the police and EMTs cleared the apartment of all those present, they left Carver on the couch, asleep, unconscious, or passed out.

The police searched the apartment for evidence and found prescription pill bottles for various drugs, including Oxycontin.  Carver alleges that the police and EMTs knew or should have known that Smith-Sandusky had overdosed on Oxycontin or other drugs, and that Carver was in imminent danger because he had also overdosed on drugs.  The EMTs did not treat Carver or transport him to a medical facility.  At some point, Carver died on the couch, but the complaint does not allege whether death occurred while the officers were present or after they left the premises.

## II.  DISCUSSION

This court reviews the district court's denial of qualified immunity *de novo*.  *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005).  We may dismiss Carver's complaint only if a violation of a clearly established right could not be "found under any set of facts that could be proven consistent with the allegations or pleadings."  *Id.* (citing *Copper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000)).

This court's analysis of the affirmative defense of qualified immunity requires two steps.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  First, Carver must plead that the defendant's actions violated a constitutional or statutory right.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Second, Carver must show that the constitutional right the officers allegedly violated was clearly established at the time of the conduct at issue.  *Id.*  We are required to consider these steps in the proper sequence in order to further "the law's elaboration" from case to case.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If we were to consider the clearly established prong first, we would deprive future litigants of an answer on the constitutional question and thereby create a situation where a particular constitutional violation could occur repeatedly without ever becoming clearly established. *See id.*

### A.  Whether there was a Constitutional Violation

"It is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need."  *Jackson*, 429 F.3d at 590 (finding no constitutional violation where the gunshot victim was placed in an ambulance but received no treatment).  Thus, the officers were under no general duty to aid Carver.  There are, however, two exceptions to this rule: 1) the custody exception and 2) the state-created danger exception.  *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 199-201 (1989).  If neither exception applies, no constitutional violation has taken place. *See id.* at 196-97.

#### 1.  Custody Exception

The mere fact that the police exercise control over an environment is alone insufficient to demonstrate that a person is seized.  *Ewolski v. City of Brunswick*, 287 F.3d 492, 507 (6th Cir. 2002).  "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has

imposed on his freedom to act on his own behalf." Deshaney, 489 U.S. at 200; *see also Estelle v. Gamble,* 429 U.S. 97, 103 (1976). Custody requires a restraint of personal liberty. *See, e.g., DeShaney*, 489 U.S. at 200; *Stemler v. City of Florence*, 126 F.3d 856, 867-68 (6th Cir. 1997).

In *Jackson*, we held that an unconscious person can be taken into custody, but "some state action that applies force (or the threat of force) and show of authority made with the intent of acquiring physical control" is required. 429 F.3d at 590. An example would be an unconscious drunk whom the police handcuff and take to jail. *Id.* We also found it persuasive that the state officers were not the cause of the plaintiff's unconscious state. *Id.*

Here, there was no physical restraint over Carver by the officers, nor did the officers direct any actions toward him. Carver's incapacity, like that of the plaintiff in *Jackson*, was self-induced. The officers did not place a restraint on Carver's personal liberty when they secured the area to conduct an investigation into the death of Smith-Sandusky. Perhaps the officers had probable cause to restrain Carver if they had wanted, but that is not what happened. The custody exception is inapplicable because the officers never restrained Carver's personal liberty in any fashion.

### 2. State-Created Danger Exception

For the state-created danger exception to apply, the plaintiff must allege: 1) an affirmative act that creates or increases a risk that the decedent would be exposed to private acts of violence; 2) a special danger to the decedent, such that the defendants' acts placed decedent specifically at risk; and 3) that defendants knew or should have known their actions specifically endangered the decedent. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).

Carver asserts that the officers created a danger by cutting off his access to private aid. In *Jackson*, we looked for "evidence that any private rescue was available or attempted" and whether the officers interfered with that aid. *Jackson*, 429 F.3d 586 at 592. Because the officers did not discourage aid to the plaintiff and no one had attempted to rescue or render aid to the plaintiff, we found that no constitutional violation had taken place. *Id.*

Here, the officers removed everyone from the apartment and they controlled the keys to the apartment. It has not been suggested that anyone tried to enter the apartment to render aid to Carver. Nor has it been established that anyone, whether it be the officers or the people removed from the apartment, knew of Carver's need for assistance. Therefore, there is no "evidence that any private rescue was available or attempted." *Id.*

The officers' act of closing off the apartment to conduct an investigation into the death of Smith-Sandusky did nothing in and of itself to increase the risk of harm to Carver. No allegation has been made that Carver died while the officers were inside the apartment with him. The fact that Carver died from an apparent self-induced drug overdose is tragic. This tragedy, however, does not allow us to usurp Supreme Court precedent that the officers were under no general duty to render aid to Carver. *DeShaney*, 489 U.S. at 196. In the absence of any allegation that a private rescue was attempted, the officers did not commit a constitutional violation by securing the apartment and leaving Carver lying on the couch.

## B.  Whether the Law was Clearly Established

Even assuming *arguendo* that Carver asserted a viable constitutional claim, he must still plead facts, which, taken in a light most favorable to him, show a violation of a clearly established right in order to overcome the officers' motion to dismiss on the basis of qualified immunity. *See Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987). In order for the law to be clearly established, it must be clear to a reasonable officer that his conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary. *See*

*Jackson,* 429 F.3d at 592.  Further, "[i]t is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau*, 543 U.S. at 198 (citing *Saucier*, 533 U.S. at 201).  There are no cases that present facts similar to Carver's situation that would make it "clear to [an objectively] reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In this case, "*Brosseau* compels a finding that such a violation is not clearly established" because the unlawfulness of the officers' actions would not be apparent to a reasonable officer in like circumstances.  *Jackson*, 429 F.3d at 592.

The district court, citing *to Beck v. Haik*, 377 F.3d 624, 643 (6th Cir, 2004), found it clearly established that the officers violated Carver's constitutional rights.  *Beck*, however, stands for the proposition that the state may not cut off access to private rescue without providing an adequate state alternative of aid.  In this case, unlike *Beck*, there were no allegations of any attempted private rescue.  There are no other cases from this circuit or the Supreme Court with analogous facts to the one before us.  Therefore, the law was not clearly established at the time of the alleged constitutional violation.

### III.  CONCLUSION

The Cincinnati police officers and EMTs are entitled to qualified immunity.  Therefore, we **REVERSE** the district court's denial of qualified immunity and **REMAND** this case to the district court for further proceedings consistent with this decision.

---
**CONCURRENCE**
---

RONALD LEE GILMAN, Circuit Judge, concurring.  I fully concur in the reasoning and result reached by the lead opinion.  My purpose in writing separately is simply to point out my total befuddlement as to why the EMTs would not have attended to Carver under the circumstances as alleged in the complaint.  But the complaint fails to bring this case within either of the exceptions set forth in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).  In contrast to the facts of *Beck v. Haik*, 377 F.3d 624, 636 (6th Cir. 2004), the present complaint makes no allegation that the defendants "cut off private sources of rescue" that otherwise would have intervened to save Carver.  If there had been allegations of a private rescue attempt aborted by the defendants' actions, I would have concluded that qualified immunity was not appropriate on a motion to dismiss.