# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2023

Lyle W. Cayce
Clerk

No. 22-20423

Oyinlola Zinsou, *Individually and as a representative of* the Estate of Olufemi Odutayo; Funmilola Olukemi Odutayo; Kolawole Odutayo; Olatunde Odutayo,

*Plaintiffs—Appellants*,

*versus*

Fort Bend County; Will Chen; Jose Diaz; James Smalley,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-2151

_____

Before Graves, Higginson, and Douglas, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:[*]

Oyinlola Zinsou, individually and as a representative of the Estate of Olufemi Odutayo, Funmilola Olukemi Odutayo, Kolawole Odutayo, and Olatunde Odutayo (collectively, "Plaintiffs") appeal the district court's dismissal of their complaint against Fort Bend County, Jose Diaz, James Smalley, and Will Chen (collectively, "Defendants") for alleged violations

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20423

of their mother's constitutional rights. The district court dismissed Plaintiffs' claims because they failed to sufficiently allege that their mother was in a "special relationship" with the state. We AFFIRM.

## I. Background

### a. Factual Background

Plaintiffs allege the following facts in their first amended complaint. On July 5, 2019, Olufemi Odutayo was having health problems in her home. At 3:36 a.m., one of her children called 911. Fort Bend County Emergency Medical Services dispatched a crew in response to the call including individual Defendants Chen, Diaz, and Smalley. When they arrived at Ms. Odutayo's home at 3:52 a.m., they did not immediately initiate care. One crew member asked Funmilola Odutayo, one of Ms. Odutayo's daughters, questions about her mother's background because Ms. Odutayo could not speak English. Funmilola begged the crew to let her ride in the ambulance to the hospital so she could provide more information about her mother's medication and health, but they refused. When the EMS crew was ready to load Ms. Odutayo into the ambulance, they made her get up and walk to the stretcher. Ms. Odutayo vomited twice, and the crew knew she was having trouble breathing. The EMS crew then took Ms. Odutayo off her home oxygen without knowing her flow rate and placed her on their own oxygen. Funmilola saw her mother gasping for air and told the crew the flow rate her mother needed, but the EMS crew did nothing. The crew started performing chest compressions on Ms. Odutayo once she was in the ambulance, but they did not leave to go the hospital for several more minutes. The ambulance left the scene at 4:25 a.m. and arrived at the hospital at 4:34 a.m. Ms. Odutayo was pronounced dead upon arrival at the hospital.

No. 22-20423

## b. Procedural Background

Plaintiffs sued Fort Bend County, Chen, Diaz, and Smalley for violating their mother's Fourteenth Amendment right to adequate medical care by acting with deliberate indifference to her health needs. They also alleged that Fort Bend County had a custom or policy of depriving emergency patients of reasonable medical care. Defendants Fort Bend County, Smalley, and Diaz filed a motion to dismiss Plaintiffs' first amended complaint for failure to state a claim. Defendant Chen later filed a similar motion.

The district court granted the Defendants' motions. It found that Plaintiffs failed to state a claim because they did not sufficiently allege that their mother had a "special relationship" with the state giving rise to a constitutional duty to provide for her safety. Plaintiffs timely appealed.

## II. Standard of Review

We review a district court's grant of a motion to dismiss for failure to state a claim de novo. *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013). We accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Id.*

## III. Discussion

### a. Duty to Provide Adequate Medical Care

The central issue in this case is whether Defendants had an affirmative constitutional duty to provide adequate medical care to Ms. Odutayo. The Due Process Clause of the Fourteenth Amendment "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). In *DeShaney*, a young boy and his mother filed a § 1983

3

action against local child protection officials alleging that they failed to protect the boy from severe beatings by his father. *Id.* at 192-93. Addressing the viability of his substantive due process claim, the Supreme Court recognized two possible exceptions to the general rule that a State has no affirmative duty to provide governmental aid under the Fourteenth Amendment.

First, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199-200. "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.* at 200; *see also Walton v. Alexander*, 44 F.3d 1297, 1299 (5th Cir. 1995) (en banc) ("[A] 'special relationship' only arises when a person is involuntarily confined or otherwise restrained against his will pursuant to a governmental order or by the affirmative exercise of state power."). Following this exception, we have found that special relationships exist between the State and prisoners, involuntarily committed mental patients, people suspected of crimes injured during arrests, and children who are removed from their homes and placed under state supervision. *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 249 (5th Cir. 2018).

Second, the Supreme Court alluded to a state's duty to protect arising when the state creates a danger or makes an individual more vulnerable to that danger. *DeShaney*, 489 U.S. at 201 ("While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."). This exception is now known as the "state-created danger"

doctrine. While ten other circuits have adopted it, we have yet to do so. *Fisher v. Moore*, --- F.4th ----, 2023 WL 4539588, at *7 (5th Cir. July 14, 2023) (Higginson, J., and Douglas, J., dissenting from denial of rehearing en banc); *Irish v. Fowler*, 979 F.3d 65, 73-75 (1st Cir. 2020) (distilling the uniform requirements of the doctrine across nine other circuits and adopting the doctrine).

### b. Special Relationship

Relying on the first exception, Plaintiffs argue they sufficiently alleged their mother had a special relationship with the state because the Defendants involuntarily restrained her.

Our sister circuits have rejected similar claims that people placed in ambulances were in custody for purposes of *DeShaney*. In *Jackson v. Schultz*, the Sixth Circuit considered whether an unconscious gunshot victim was involuntarily retrained when EMTs moved him from a crime scene into an ambulance where he later died. 429 F.3d 586, 588 (6th Cir. 2005). It first explained that "[i]t is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need." *Id.* at 590. Turning to the allegations at hand, it found they did not show he was in custody:

> The EMTs did not cause decedent to be shot nor did they render him unconscious. There is no allegation that the EMTs restrained or handcuffed the decedent. There is no allegation that the decedent was not free to leave the ambulance or be removed from the ambulance. Decedent's liberty was 'constrained' by his incapacity, and his incapacity was in no way caused by the defendants. In sum, no set of facts consistent with the allegations shows that the EMTs did anything to restrain the decedent's liberty.

*Id.* at 591. Consequently, the court found no constitutional violation under the custody exception based on the facts alleged. *Id.*

In *Wideman v. Shallowford Cmty. Hosp., Inc.*, the plaintiff was pregnant and called 911 when she began experiencing abdominal pain. 826 F.2d 1030, 1031 (11th Cir. 1987). She requested that EMS personnel drive her to her doctor at Piedmont Hospital, but they instead took her against her wishes to a different hospital. *Id.* She was finally transferred to Piedmont after a lengthy delay, but her doctor could not stop her labor. *Id.* She gave birth to a premature baby, and the baby survived for only four hours. *Id.* She then sued the county and its employees claiming they violated her constitutional right to adequate medical treatment. *Id.* Acknowledging that there is no general constitutional right to medical care from the state, the Eleventh Circuit concluded that the county "did not exercise a degree of coercion, dominion, or restraint over" her to form a special relationship:

> The County did not force or otherwise coerce her into its ambulance; it merely made the ambulance available to her, and she entered it voluntarily. [Plaintiff]'s physical condition at the time might have required her to seek immediate medical help, and that need might have induced her to make use of the service provided by the County, hoping that she could convince the EMS employees to take her where she wanted to go. Her physical condition, however, cannot be attributed to the County.

*Id.* at 1036. Accordingly, while her state tort law claims against the county and its employees may have been meritorious, she failed to sufficiently allege a constitutional violation. *Id.* at 1037.

Here, like the plaintiffs in *Jackson* and *Wideman*, the state did not cause Ms. Odutayo's underlying health conditions. There is no allegation that Defendants restrained Ms. Odutayo in any way such as by using handcuffs. Plaintiffs also did not allege that the Defendants forced Ms.

Odutayo to get on the stretcher or in the ambulance against her will. To the contrary, their complaint alleges that the EMS crew told her to get up and walk to the stretcher and she did so. While their brief claims otherwise, Plaintiffs did not allege that they lacked the option of calling a different ambulance service. In sum, Plaintiffs have not alleged facts sufficient to show that their mother was in custody for purposes of *DeShaney*. Thus, the district court correctly dismissed Plaintiffs' claims for failure to state a constitutional violation against Defendants. The district court also correctly dismissed Plaintiffs' claim against the County because every *Monell* claim "fail[s] without an underlying constitutional violation." *Whitley*, 726 F.3d at 648.

## IV. Conclusion

There is no freestanding Fourteenth Amendment right to adequate medical care for private citizens. As the Supreme Court explained, it is the state's affirmative act of taking a person into custody and holding them against their will that implicates a due process interest. *DeShaney*, 489 U.S. at 200. The mere fact that Ms. Odutayo was placed in an ambulance did not amount to custody, so Plaintiffs cannot proceed with their constitutional claims.

We AFFIRM the district court's judgment.