**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0132n.06**
**Filed: February 16, 2007**

**No. 05-2269**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Rubye Baker, Personal Representative for the Estate of Stacey Baker, Deceased, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| The City of Detroit, | ) ) | |
| Defendant-Appellee, | ) ) | |
| Marcus Townsend, | ) ) | |
| Defendant-Appellee, | ) ) | |
| John Doe, | ) ) | |
| Defendant-Appellee, | ) ) | OPINION |
| Detroit Fire Department Emergency Medical Services Division, | ) ) ) | |
| Defendant-Appellee. | ) ) | |

**Before: BATCHELDER, GILMAN, and ROGERS, Circuit Judges.**

ROGERS, Circuit Judge. The mother and personal representative of the estate of Stacey

Baker appeals the district court's order granting summary judgment on qualified immunity grounds

in favor of the City of Detroit and Marcus Townsend, a former paramedic employed by the City.

The plaintiff sued the City, Townsend, and others under 42 U.S.C. § 1983 and Michigan state law

following the death of Stacey Baker, allegedly at the hands of Marcus Townsend. Following an amendment of the complaint to dismiss the state law claims with prejudice, the defendants moved for summary judgment, which the district court granted. Because the plaintiff has not alleged a deprivation of any right secured by the United States Constitution, the defendants were entitled to summary judgment and we affirm the judgment of the district court.

## I. Background

### A. Factual Background

On December 10, 2001, Lindsey West and defendant Marcus Townsend arrived at the home of 39-year-old Stacey Baker in Detroit, Michigan, in response to a 911 call. Baker was experiencing breathing difficulties. Townsend was an advanced emergency medical technician, licensed and certified to dispense medication. Upon arriving at Baker's home, Townsend observed that Baker's condition did not appear to be serious, although she communicated to Townsend that she had been experiencing breathing problems for several weeks, but that she had been going to work. In response to a question about medical problems, Baker told Townsend that her family had a history of hypertension, although Baker told Townsend that she had not been diagnosed with hypertension and was not on medication for hypertension. Baker also told Townsend that she had no heart problems. Baker was able to walk to the ambulance and Townsend allowed her to do so. Before allowing Baker to walk to the ambulance, Townsend did not take Baker's vital signs.

Baker began to experience "extreme respiratory discomfort" after entering the ambulance. She did not want to sit down inside the ambulance and began to experience a bronchial spasm. Townsend described Baker as "getting very panicking [sic]" at this point, "[not] combative . . . she wasn't fighting . . . just having problems." Townsend prepared a nebulizer containing the drug albuterol and testified that either he or West had to hold Baker in order to get the mask on her. Baker knocked the mask off and was still standing inside the ambulance when Townsend injected .5 cc of the drug epinephrine into Baker's arm. The injection apparently calmed Baker, and she was placed on the cot inside the ambulance. After calming Baker and getting her on the cot, Townsend still did not take her vital signs, but administered another .5 cc of epinephrine. In 2001, Detroit East Medical Control Authority (DEMCA) protocols provided that a paramedic was to administer only .3 cc of epinephrine and only "post-radio"—that is, after receiving instructions to do so from someone at the hospital. Epinephrine was not supposed to be administered to patients with elevated blood pressure or cardiac problems, or to people over 35.

Townsend notified St. John Hospital that he was coming "Code 1" with a 39-year-old woman experiencing extreme respiratory distress to whom he had administered epinephrine. Townsend did not tell the hospital dispatcher how much epinephrine he had administered. Townsend told the hospital that he was unable to get Baker's vital signs, but that he would try to get them before he arrived at the hospital. Townsend did not take Baker's vital signs before arriving at the hospital. Upon arriving at the hospital, Townsend and West immediately took Baker to the hospital's resuscitation room where they waited nine minutes before a doctor arrived. Baker was still

experiencing breathing problems while waiting for the doctors to arrive, was still taking the albuterol, and was still on the EMS cot. No one took Baker's vital signs upon her arrival at the hospital. Baker went into full cardiopulmonary arrest and died soon after the doctors appeared. According to the plaintiff's causation expert, the epinephrine injections were the cause of Baker's death.

On December 17, 2001, one of the emergency room physicians at St. John Hospital sent a letter to Dr. Brooks Bock, medical director of DEMCA, raising concerns about the care Baker received prior to her arrival at St. John Hospital. The DEMCA Quality Assurance Committee met with Townsend and eventually found that Townsend's initial assessment of Baker was too limited; that the run sheet was poorly documented with no vital signs noted on it; and that Townsend violated DEMCA protocols regarding the administration of epinephrine because Baker was over 35 years of age, epinephrine was only to be administered "post-radio," and because the maximum dose was .3 cc. Bock instructed Gary Kelly, chief of Detroit EMS, that Townsend was to complete certain training and refresher courses before he would be permitted to perform prehospital health care as a paramedic. Townsend retired in early 2003.

**B. Procedural Background**

On June 10, 2004, the plaintiff brought suit against Townsend, John Doe I, the City of Detroit Fire Department Emergency Medical Services Division, and DEMCA in state court, alleging (1) malpractice; (2) gross negligence; (3) violations of the Examination of and Treatment for Emergency

Medical Conditions and Women in Labor Act, 42 U.S.C. § 1395dd; (4) violations of 42 U.S.C. § 1983; (5) intentional tort; and (6) unlawful deprivation of the right to family association. The case was removed to federal court and DEMCA was dismissed as a defendant on stipulation of the parties. The § 1983 claims at issue in the present appeal are those alleging a violation of Baker's Fourteenth Amendment rights. First, relying on *Estelle v. Gamble*, 429 U.S. 97 (1976), and *Youngberg v. Romeo*, 457 U.S. 307 (1982), the plaintiff alleged that Townsend violated Baker's Fourteenth Amendment rights because he took her into custody, thereby creating a special relationship that imposed a duty on Townsend to provide adequate medical care. Second, the plaintiff alleged that Baker's constitutional rights were violated because Townsend, by administering the epinephrine, created or exacerbated the danger Baker faced.

On December 27, 2004, the district court, upon stipulation of the parties, dismissed with prejudice all state law claims against the City and Townsend. In April 2005, the plaintiff filed a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure to vacate the stipulated order of dismissal of the state law claims, claiming that the stipulated order was based on a mistaken belief that Detroit EMS operated as a governmental entity and was thus entitled under Michigan law to immunity from the plaintiff's state law claims. The district court denied the motion and also denied a subsequent motion for reconsideration.

With only the federal law claims remaining, the defendants filed a motion for summary judgment on qualified immunity and other grounds, and the district court granted the motion on August 5, 2005.

The plaintiff now appeals the grant of summary judgment on her § 1983 claims that allege

violations of Baker's Fourteenth Amendment rights. She also appeals the district court's denial of

her Rule 60 motion to vacate the stipulated dismissal of her state law claims.

## II. Analysis

### A. Standard of Review

The district court's grant of summary judgment is reviewed de novo. *Plant v. Morton Int'l,*

*Inc.*, 212 F.3d 929, 933 (6th Cir. 2000). Summary judgment is only appropriate where "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[t]he mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which

the jury could reasonably find for the plaintiff." *Id.* at 252.

### B. Section 1983 Claims

#### 1. Claim Under *Estelle-Youngberg*

Because Townend's actions did not amount to a restraint on Baker's personal liberty, no

special relationship arose between Baker and Townsend that would give rise to a duty on the part

of Townsend to provide adequate medical care. Thus, the plaintiff's attempt to fit the facts of her case within the *Estelle-Youngberg* line of cases fails.

Townsend's actions in the ambulance do not amount to a restraint on personal liberty sufficient to give rise to a special relationship that, in turn, gives rise to an affirmative duty to provide adequate medical care. The plaintiff highlights West's testimony that he attempted to secure Baker in the ambulance and that he was unable to drive Baker to the hospital unless she was secured. The plaintiff also points out Townsend's deposition testimony that either he or West "had to kind of hold" Baker while the other put the mask on her for purposes of administering the albuterol and that West held Baker while Townsend injected her with the first dose of epinephrine. The plaintiff does not dispute that Baker voluntarily called 911, that she voluntarily went with West and Townsend to the ambulance in order to be taken to the hospital, that she then began to experience difficulty breathing that required the intervention of the paramedics, and that she became panicky and did not want to sit down inside the ambulance. The facts alleged by the plaintiff show that Townsend attempted to administer medication for Baker's benefit, a course of action consistent with Baker's desire to be treated and taken to the hospital. Townsend's actions, whether medically correct or negligent, were not the sort of actions giving rise to a conclusion that Baker was in custody.

This conclusion is supported by *Jackson v. Schultz*, 429 F.3d 586 (6th Cir. 2005), a case that also involved allegedly inadequate care by emergency medical personnel. *Jackson* held that the proper inquiry in determining whether someone is placed in custody is whether there was a restraint on personal liberty similar to those highlighted in *DeShaney v. Winnebago County Department of*

*Social Services*, 489 U.S. 189 (1989). *Jackson*, 429 F.3d at 590. The Supreme Court in *DeShaney*

recognized a line of cases "stand[ing] . . . for the proposition that when the State takes a person into

its custody and holds him there against his will, the Constitution imposes upon it a corresponding

duty to assume some responsibility for his safety and general well-being." 489 U.S. at 199-200

(citing *Estelle v. Gamble*, 429 U.S. 97 (1976) (Eighth Amendment) and *Youngberg v. Romeo*, 457

U.S. 307 (1982) (Fourteenth Amendment)). The restraints on liberty mentioned in *DeShaney*

involved the application or threat of force and a show of authority made with the intent of acquiring

physical control. *Jackson*, 429 F.3d at 590. Accordingly, this custody exception to the general rule

of nonliability for § 1983 claims based on the government's failure to provide adequate medical care

has been applied only to cases involving prisoners, *Estelle*, 429 U.S. at 103-04; pretrial detainees,

*City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); those involuntarily committed to

mental institutions, *Youngberg*, 457 U.S. at 315; and foster children, *Nicini v. Morra*, 212 F.3d 798,

808 (3d Cir. 2000). "The overarching prerequisite for custody is an affirmative act by the state that

restrains the ability of an individual to act on his own behalf." *Jackson*, 429 F.3d at 590 (citing

*Stemler v. City of Florence*, 126 F.3d 856, 868 (6th Cir. 1997)). Townsend's actions were in

accordance with Stacey Baker's desire to be treated, and the plaintiff cannot fit her § 1983 claim

within the *Estelle-Youngberg* framework because no custodial relationship existed that was similar

to those described in *DeShaney*.

## 2. State-Created Danger Claim

The plaintiff's second argument is difficult to decipher. She argues that the district court erred in granting summary judgment as to Townsend because he created the danger that resulted in Baker's death by injecting her with epinephrine in violation of governing protocols, and that there is a genuine issue of material fact "as to whether defendants actively placed [Baker] in danger and whether, as a result, the defendants had an affirmative duty to protect rather than deprive her of her life." The plaintiff's brief then proceeds to argue that this case is not like *Bradberry v. Pinellas County*, 789 F.2d 1513 (11th Cir. 1986), where the Eleventh Circuit affirmed a grant of summary judgment in favor of the county in a case involving a failed rescue on the part of a lifeguard. By arguing in the negative, the plaintiff is apparently alleging that summary judgment was improper because Townsend, a state actor, caused Baker's death through affirmative acts and that this gives rise to a constitutional violation.

However, the plaintiff has not argued that Townsend acted with the requisite level of culpability. In fact, the plaintiff's brief does not even address what level of culpability would be appropriate in this case. It is not clear whether a standard of deliberate indifference, a standard that has been applied in cases involving custodial relationships, would be appropriate in this context or whether a standard involving even greater culpability should apply given the reality of the emergency situation Townsend faced. *See County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) ("[O]ur concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking."). The

plaintiff has not addressed this issue, instead appearing to argue that, because Townsend did something that allegedly resulted in death, summary judgment was inappropriate. However, the mere allegation of an affirmative act is insufficient to state a constitutional claim without reference to the circumstances under which the action was taken and an analysis of what level of culpability applies to those circumstances. *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Because the plaintiff's argument is based solely on Townsend's actions without a discussion of how those actions amount to a constitutional violation, the plaintiff's § 1983 claim fails.

### 3. Municipal Liability

Because the plaintiff has failed to establish a deprivation of Baker's constitutional rights, she cannot establish liability against the City. "[T]he determination that the City's officials did not violate the plaintiffs' constitutional rights resolves the claim against the City as well." *Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6th Cir. 2003).

### C. Denial of the Plaintiff's Rule 60 Motion

We also affirm the district court's refusal to allow the plaintiff to reinstate her state-law claims against the defendants. However, we affirm on different grounds than those relied on by the district court.

The district court purported to dismiss with prejudice the state-law claims against Townsend and the City upon stipulation of the parties. The district court did not refer to any Federal Rule of Civil Procedure in ordering the dismissal, but the language of the order indicates that the order was granted pursuant to Rule 41(a)(ii), which allows the dismissal of an *action* after a responsive pleading has been served upon a filing of a stipulation signed by all parties. Fed. R. Civ. P. 41(a). Rule 41 does not speak to dismissal of *claims*, and an amendment pursuant to Rule 15 is the appropriate way to dispose of fewer than all claims against a defendant. *See Mgmt. Investors v. United Mine Workers of Am.*, 610 F.2d 384, 394-95 (6th Cir. 1979). However, it is not unusual for motions styled as Rule 41 motions or motions to dismiss to be construed as Rule 15 motions for leave to amend. *See Gronholz v. Sears, Roebuck & Co.*, 836 F.2d 515, 518 (Fed. Cir. 1987); *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 114 (2d Cir. 1985). Because a responsive pleading had been served prior to the proposed amendment, Rule 15(a), like Rule 41(a), would have required permission from the district court or consent of the defendants. As the dismissal of the state-law claims was upon stipulation of the parties, the defendants consented to the amendment, although apparently with the qualification that the plaintiff be barred from asserting the state-law claims in the future. J.A. at 94 (Stipulated Order for Dismissal of All State Law Claims).

Facing summary judgment on the federal law claims, the plaintiff attempted to undo the deal she made with the defendants by filing a Rule 60 motion to vacate the dismissal of the state-law claims. However, filing a motion pursuant to Rule 60 was inappropriate because the dismissal order was not a final judgment or order. *See* Fed. R. Civ. P. 54(b). Despite this defect, the plaintiff's Rule

60 motion can easily be construed as a motion for leave to amend her complaint under Rule 15, because the motion arguably complies with Rule 7(b) in stating with particularity the grounds for the motion, and it was clear that the plaintiff was seeking to reinstate her state law claims against the defendants. The denial of a motion for leave to amend is reviewed for an abuse of discretion. *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 853 (6th Cir. 2006).

In denying the motion to vacate, the district court concluded that the plaintiff's state-law claims against the City could not survive the defense of governmental immunity under Michigan law. Allowing the plaintiff to proceed on her state-law claims against the City would thus have been futile. Futility is a proper ground for denying leave to amend that this court reviews de novo. *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).

Under Michigan law, there is an exception to governmental immunity if the injury arose out of the performance of a proprietary function. Mich. Comp. Laws Ann. § 691.1413. In order to be considered a proprietary function, however, the state activity must be conducted primarily for the purpose of producing a pecuniary profit. *Id.* The district court found that nothing in the record suggests that the City of Detroit EMS is in fact proprietary, despite the fact that it generates revenue. In fact, Gary Kelly, superintendent of the City of Detroit EMS, stated in his deposition testimony that the EMS department had never been profitable. Allowing the plaintiff the reinstate her state-law claims against the City under these circumstances would have been futile. The district court was therefore correct in denying the motion to vacate.

Nor did the district court abuse its discretion in denying the motion to vacate with respect to the state-law claims against Townsend, given that the plaintiff chose to seek the consent of the defendants in eliminating the state-law claims and acquiesced to the condition that she be barred from bringing those claims again in the future. The plaintiff, in her motion to vacate, relied on an expert report supporting a theory of gross negligence against Townsend. Although gross negligence would strip Townsend of immunity under Michigan law, Mich. Comp. Laws § 333.20965(1), the plaintiff has offered no explanation regarding why she dismissed this claim with prejudice in the first place or why the new evidence she relies on relieves her of the burdens of the deal she struck with the defendants. Although the expert report is perhaps additional evidence to support the claim, it is not the kind of new evidence that would compel this court to conclude that the equities favor the plaintiff to such an extent that she should be allowed to amend her complaint in the face of a voluntary dismissal with prejudice. Thus, the district court did not abuse its discretion in requiring that the plaintiff to abide by the very conditions to which she agreed.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.