NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0083n.06

No. 09-4436

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Feb 07, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| 111 DEBT ACQUISITION HOLDINGS, LLC, | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| SIX VENTURES LTD., ET AL., | ) | |
| | ) | **O P I N I O N** |
| *Defendants-Appellants.* | ) | |
| | ) | |
| | ) | |

BEFORE: MOORE and STRANCH, Circuit Judges; and COHN, District Judge.[*]

**COHN, District Judge.** This appeal arises out of a $20,900,000.00 secured loan. CFA Capital Partners, LLC ("CFA"), predecessor-in-interest to plaintiff-appellee 111 Debt Acquisitions Holdings, LLC ("111 Debt"), made the loan to Six Ventures, Ltd. ("Six Ventures") in connection with Six Ventures' refinancing of six apartment complexes ("secured properties"). As part of the loan transaction, defendants-appellants Steven M. Kahn ("Kahn") and William C. McMenamy ("McMenamy") (collectively, "defendants"), along with David Rhodehamel ("Rhodehamel"), signed a Guaranty of Recourse Obligations ("guaranty"). Also as part of the loan transaction, CFA assigned its rights in the loan to 111 Debt.

Six Ventures defaulted on the loan. After demanding payment, but receiving no response from Six Ventures, 111 Debt filed an action in district court for breach of contract, foreclosure, and

---

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

replevin of the secured properties, in order to obtain relief from the default. In the same action, 111 Debt also filed a claim against defendants and Rhodehamel for breach of the guaranty, the claim presently at issue. After Six Ventures filed for bankruptcy, 111 Debt filed a motion for partial summary judgment on the guaranty claim, seeking to hold defendants and Rhodehamel liable for the full debt of Six Ventures. The district court granted 111 Debt's motion for partial summary judgment and ultimately found defendants liable for $10,560,000, the remaining balance on the loan after foreclosure and sale of the secured properties.

Defendants now appeal the district court's grant of partial summary judgment on various grounds, including that there is a genuine issue of material fact as to whether they can be found liable under the terms of the guaranty. Defendants also appeal the district court's order directing entry of a final judgment on grounds that the final judgment was nullified when the district court in the same order granted 111 Debt's motion to amend the first amended complaint.

For the reasons that follow, the district court's grant of partial summary judgment and final judgment order will be affirmed.

## I. BACKGROUND

As stated, CFA entered into a secured loan agreement with Six Ventures and later assigned its interest in the secured loan to 111 Debt. Defendants and Rhodehamel were guarantors on the loan. After Six Ventures defaulted, 111 Debt, as part of a foreclosure action, included a claim to collect against the guaranty. In its motion for partial summary judgment, 111 Debt claimed that defendants and Rhodehamel were liable for the full amount of the loan made to Six Ventures because a springing recourse event ("SRE") – a bankruptcy petition filed by Rhodehamel on behalf

of Six Ventures – triggered defendants' and Rhodehamel's obligations under the terms of the loan agreement and the guaranty.

Following the bankruptcy petition filing, the district court issued a stay on 111 Debt's action until the resolution of the bankruptcy petition. 111 Debt next moved for relief from the automatic stay, and the bankruptcy court granted the motion. During the hearing, the bankruptcy court noted that there was "some question about whether or not [Rhodehamel] had proper corporate authority to make the filing, [but] ma[de] no finding in this regard." Appellants' Brief, Appendix A. The bankruptcy court later dismissed the petition.

The district court lifted the stay on 111 Debt's action following the bankruptcy petition dismissal, and later granted partial summary judgment to 111 Debt, finding defendants liable for the full amount of $20,900,000.00. Defendants filed a motion for reconsideration to amend the judgment on the ground that the district court denied them the opportunity to contest the award when it entered a final judgment. The district court granted the motion and entered an amended judgment for the full amount, subject to any applicable offsets.

The court-appointed receiver later sold the secured properties, and 111 Debt filed a motion asking the Court for leave to amend its amended complaint to remove unnecessary claims and for a final judgment against defendants for $10,560,000.00, the balance of the loan after foreclosure and sale of the secured properties. The district court concluded that "justice require[d] the allowance of the amendment" requested by 111 Debt due to the fact that "the Court's previous concern related to the potential off-set by the foreclosure [was] alleviated as the property [had] been sold." District Court Doc. 285, at p. 2-3. Further, the Court concluded that because "[a]ll other claims against all

other [d]efendants in the case ha[d] been resolved by the Court . . . entry of judgment in [111 Debt's]

favor [was] now appropriate." District Court Doc. 285, at p. 3. As a result, the Court granted 111

Debt's motion and in the same order directed entry of a final judgment against defendants and

Rhodehamel.

## II. GOVERNING DOCUMENTS

### A. Loan Agreement

The CFA-Six Ventures loan agreement contains the following pertinent provisions:

10.1 <u>Exculpation</u>. . . . Notwithstanding anything to the contrary in this Agreement or any of the Loan Documents . . . (B) **Lender's agreement not to pursue personal liability of Borrower as set forth above SHALL BECOME NULL AND VOID and shall be of no further force and effect, and the Debt shall be fully recourse to Borrower in the event that one or more of the following occurs (each, a** *Springing Recourse Event*): . . .

(3) **the occurrence of any condition or event described in either Section 8.1(f) or Section 8.1(g)** and, with respect to such condition or event described in Section 8.1(g), either Borrower, any Guarantor or any Person owning an interest (directly or indirectly) in Borrower or any Guarantor consents to, aids, solicits, supports, or otherwise cooperates or colludes to cause such condition or event or fails to contest such condition or event.

District Court Doc. 15-1, at p. 64 (emphasis added).

8.1 <u>Events of Default</u>. An "Event of Default" shall exist with respect to the Loan if any of the following shall occur: . . .

(f) **Borrower or any Guarantor shall** (i) make an assignment for the benefit of creditors, or (ii) **shall generally not be paying its debts as they become due**;
(g) a receiver, liquidator or trustee shall be appointed for Borrower or a Guarantor; or Borrower or a Guarantor shall be adjudicated a[s] bankrupt or insolvent; **or any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall**

**be filed by or against, consented to, or acquiesced in by, Borrower or Guarantor, as the case may be**; or any proceeding for the dissolution or liquidation of Borrower or a Guarantor **shall be instituted; provided, however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Borrower or a Guarantor, as the case may be, only upon the same not being discharged, stayed or dismissed within 60 days[.]**

District Court Doc. 15-1, at p. 56 (emphasis added).

**B. Guaranty**

The Guaranty of Recourse Obligations agreement between Rhodehamel, Kahn, and McMenamy, as guarantors, and CFA contains the following pertinent provisions:

> 1. Definitions  . . .
>     (b) The term *Guaranteed Obligations* means (i) Borrower's Recourse Liabilities, (ii) from and after the date that any Springing Recourse Event occurs, payment of all the Debt as and when the same is due in accordance with the Loan Documents (and whether accrued prior to, on or after such date).
>
> 2. Guaranty.
>     (a) Each Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment when due of the Guaranteed Obligations.

District Court Doc. 15-49, at p. 3.

> 5. Unconditional Character of Obligations of Guarantors. . . .
>     (b) The obligations of Guarantors under this Guaranty, and the rights of Lender to enforce the same by proceedings, whether by action at law, suit in equity or otherwise, shall not be in any way affected by any of the following:
>
>> (i) any insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower, the Property or any part thereof, or a Guarantor; . . .

*Id.* at pp. 5-6.

### III. DISCUSSION

**A. Substantive Claims**

As stated, defendants argue that the district court erred substantively by granting partial summary judgment as to liability. Particularly, defendants assert that the guaranty agreement is ambiguous and, thus, that a genuine issue of material fact exists as to whether defendants are personally liable for the loan. Next, defendants assert that an unauthorized bankruptcy filing cannot constitute a SRE. Likewise, defendants say the SRE clause was never triggered and they are not liable in their personal capacity.

"This court reviews a district court's grant of summary judgment *de novo* and applies the same standard as the district court." *Alexander v. CareSource*, 576 F.3d 551, 557 (6th Cir. 2009). Particularly, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). All facts and inferences should be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).

*1. Guaranty Ambiguity*

Defendants first argue that guaranty section 5(b)(i), *supra*, which states that a guarantor's obligations are not affected in the event of a bankruptcy, is ambiguous or conflicts with other provisions. Defendants say that the section is ambiguous because it could be interpreted to mean that defendants, as guarantors, have no additional obligations in the event of a bankruptcy. Defendants'

argument is without merit. The clear meaning of the provision is that a guarantor's obligations under the terms of the loan documents do not change in the event of a bankruptcy, not that guarantors are released from the liability provided therein. To read the provision as defendants suggest is counter-intuitive. Instead, the loan agreement and guaranty clearly provide that a bankruptcy filing is a SRE and that a SRE renders the defendants, as guarantors, personally liable for the full debt.

In the same argument, defendants assert that the guaranty's section 10 heading, "Unconditional Character of Obligations of Guarantor," *supra*, should not have impacted the district court's finding related to this issue, and that the district court erred by not giving more weight to Kahn's affidavit in which he stated that he never intended to be liable for the entire amount of the debt. Defendants' assertions are without merit as they do not change the clear meaning of the guaranty provision that defendants contest as ambiguous. A guarantor's obligations under section 5(b)(i) are not ambiguous. Thus, the district court did not err in finding the same.

Defendants also argue that the guaranty's definition of "Guaranteed Obligations," section 1(b), *supra*, is ambiguous. Particularly, defendants say that because modifiers are not used in the clause – "and" or "or" – the clause should be read as one sentence and to mean that it is ambiguous whether defendants are liable for the full amount of the debt. Defendants' claim is without merit. Whether the definition is read as one sentence or as two independent sentences, it is clear that defendants are liable for the full debt in the case of a SRE, which defendants concede converts their debt obligations from non-recourse to recourse. *See* Appellants' Brief, at p. 5. Thus, the district court did not err in finding a lack of ambiguity related to the definition of the guaranty's "Guaranteed Obligations" term.

*2. Bankruptcy Petition*

Next, defendants argue that an unauthorized bankruptcy filing cannot constitute a SRE. Particularly, defendants say that the SRE clause was not triggered because Kahn did not consent to the bankruptcy petition filed by Rhodehamel and, thus, without majority consent, under the Six Ventures organizational and operating documents, Rhodehamel did not have the authority to file the petition, which was later dismissed. Relying on *Price v. Gurney*, 324 U.S. 100, 106 (1945), defendants argue that because Rhodehamel did not have the authority to file the petition, the bankruptcy court did not have jurisdiction to hear the petition. That is, because the bankruptcy petition was improperly filed and heard, it should be treated as though it never happened. And because the bankruptcy petition is what 111 Debt is relying on as the SRE that exposed defendants to personal liability, if the bankruptcy petition never happened, neither did the SRE. Thus, defendants say they are not liable.

As evidence that the bankruptcy petition was improper and that Kahn did not consent, defendants proffer Kahn's affidavit and a statement from the bankruptcy court during 111 Debt's motion to grant relief from the automatic stay hearing. First, Kahn's affidavit, offered with defendants' response to 111 Debt's motion for partial summary judgment, states that he had no knowledge and did not consent to Rhodehamel filing the petition. District Court Doc. 61, Exhibit A, at p. 2. Second, as previously stated, the bankruptcy court noted during the hearing that there was "some question about whether or not [Rhodehamel] had proper corporate authority to make the filing, [but] ma[de] no finding in this regard." Appellants' Brief, Appendix A. The bankruptcy court also noted that Rhodehamel's improper filing supported the dismissal of the petition.

In response, 111 Debt says that defendants' argument is misplaced because the loan agreement and guaranty are the governing documents to the present matter, not Six Ventures' internal documents. 111 Debt is correct that the loan and guaranty documents, not Six Ventures' internal documents, govern the present matter.

111 Debt further argues that all that was required under the loan agreement to trigger a SRE was for a guarantor to consent to, aid, solicit, support, cooperate, collude in or fail to contest a bankruptcy petition on behalf of Six Ventures. Accordingly, 111 Debt says that when Kahn did not contest the bankruptcy petition, the SRE clause was triggered.

The district court agreed with 111 Debt, finding "nothing in the language of the Guaranty that requires unanimous consent or approval of the bankruptcy by all Guarantors," and no "provision that provides a safe harbor for a Guarantor who claims to have objected to that filing after the fact." District Court Doc. 102, at p. 11. Further, the district court found Kahn's objection after the bankruptcy petition was filed to be irrelevant, noting that "[n]either Kahn nor McMenamy filed any document or pleading with the bankruptcy court that contested the filing of that bankruptcy at any time or that suggested that the filing was in any way improper." *Id.*

According to section 10.1 of the loan agreement, "Lender's agreement not to pursue personal liability of Borrower as set forth above SHALL BECOME NULL AND VOID and shall be of no further force and effect, and the Debt shall be fully recourse to Borrower in the event that . . . any condition or event described in either Section 8.1(f) or Section 8.1(g)" occurs. A section 8.1(g) event includes "any petition for bankruptcy . . . filed by or against, consented to, or acquiesced in by,

Borrower or a Guarantor." Thus, a section 8.1(g) event occurred when Rhodehamel, a guarantor, filed the bankruptcy petition on behalf of Six Ventures.

It is no answer that Kahn, another guarantor, may have contested the filing. The bankruptcy filing renders the debt fully recourse under section 10.1 if "*any Guarantor* consents to, aids, solicits, supports, or otherwise cooperates or colludes to cause . . . or fails to contest" the bankruptcy filing (emphasis added). Again, Rhodehamel, a Guarantor, filed the bankruptcy petition and, thus, "consent[ed] to, aid[ed], solicit[ed], support[ed], or otherwise cooperate[d] or collude[d] to cause . . . or fail[ed] to contest" that filing. Under the plain language of the loan documents, therefore, the debt is fully recourse regardless of whether the other guarantors—the defendants—contested the bankruptcy filing.[1]

Thus, because defendants are liable under the plain meaning of the loan agreement and guaranty, we agree with the district court's decision to grant partial summary judgment.[2]

---

[1] Contrary to the district court's assertion, there *is* a safe harbor under section 8.1(g) for petitions filed without the consent of the borrower or a guarantor; that protection simply does not apply here. The loan agreement provides that if "such petition or proceeding was involuntary and not consented to by Borrower or a Guarantor" it is a section 8.1(g) event of default "only upon the same not being discharged, stayed or dismissed within 60 days." There is no reprieve for the defendants under this provision, however, because the bankruptcy petition was dismissed after the 60-day period.

[2] Defendants also argue that the district court erred in granting partial summary judgment because 111 Debt's claim for relief is beyond the scope of the amended complaint, and because holding the defendants liable based on the bankruptcy filing violates public policy. We see no merit to these arguments and affirm for the reasons given by the district court.

## B. Procedural Claim

Finally, defendants argue that the district court erred procedurally by ordering entry of a final judgment at the same time it granted 111 Debt's motion to amend the first amended complaint. Defendants assert that granting the motion nullified the final judgment. Defendants further assert error on the ground that they never had an opportunity to respond to the amended complaint. Thus, they say the judgment was improperly entered.

111 Debt responds that it properly moved to amend the first amended complaint under Fed. R. Civ. P. 15. 111 Debt also argues that the amendment was proper because the present claim against defendants, the guaranty claim, was not affected by the amendment.

A district court's decision to enter final judgment on some, but not all, claims pursuant to Rule 54(b) should be given "substantial deference." *Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 10 (1980). Further, this Court has held that "an amendment pursuant to Rule 15 is the appropriate way to dispose of fewer than all claims against a defendant." *Baker v. City of Detroit*, 217 Fed. Appx. 491, 496 (6th Cir. 2007). Finally, Rule 15(a) provides that "leave shall be freely given when justice so requires," *Miller v. Administrative Office of Courts*, 448 F.3d 887, 898 (6th Cir. 2006), and this Court has listed several factors to consider in order to decide whether to allow an amendment: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Id.* (quoting *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001)).

As an initial matter, because the motion to amend the first amended complaint removed claims unrelated to the breach of guaranty claim made against defendants, defendants did not suffer undue prejudice from the amendment and defendants have not shown that 111 Debt acted in bad faith in moving for the amendment. Thus, under the Federal Rules of Civil Procedure, the district court did not err by granting 111 Debt's motion to amend the first amended complaint and in the same order directing entry of a final judgment.

Further, defendants' reliance on *B&H Medical, LLC v. ABP Admin., Inc.*, 526 F.3d 257 (6th Cir. 2008), is misplaced. Related to this issue of amending a complaint, *B&H Medical* stands for the proposition that a party cannot argue claims on appeal that it previously removed by filing an amended complaint. *Id.* at 268 & n. 8 (quoting *Drake v. City of Detroit*, No. 06-1817, 2008 WL 482283, at *2 (6th Cir. Feb. 21, 2008) (stating that a prior "complaint is a nullity, because an amended complaint supercedes all prior complaints").

Here, 111 Debt did not move to remove the guaranty claim against defendants and is not attempting to use the removed claims or their respective arguments against them. Rather, 111 Debt asked the district court to remove unnecessary claims because they were no longer being pursued by 111 Debt, i.e., they were resolved. It follows, then, that when the district court granted 111 Debt's motion, it simply allowed removal of the resolved claims and ordered entry of a final judgment against defendants in order for the remaining claim against them also to be resolved. In other words, the first amended complaint was not nullified, but was amended such that all matters other than the guaranty claim were in effect withdrawn, and became *functus officio*. *See Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955) ("An amended pleading ordinarily supersedes the prior pleading. The

prior pleading is in effect withdrawn as to all matters not restated in the amended pleading, and becomes *functus officio*." ) (citation omitted). Moreover, the guaranty claim remained intact and the final judgment against defendants as to that claim was properly ordered and entered. Accordingly, defendants' argument to the contrary is without merit.

## IV. CONCLUSION

For all of the above reasons, we **AFFIRM** the district court's grant of partial summary judgment and order directing a final judgment against defendants.