*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

STEPHANIE PEETE,

               *Plaintiff-Appellee,*

    *v.*

METROPOLITAN GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY; NASHVILLE TENNESSEE FIRE
DEPARTMENT,

               *Defendants,*

MICHAEL TURNER, Firefighter Captain; MALCOLM
ARRINGTON, Firefighter; WILLIAM KEVIN WEST,
Paramedic; DAVID KINGSBURY, Paramedic; LLOYD
CRAWFORD, EMT,

               *Defendants-Appellants.*

No. 06-5321

>

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 05-00552—William J. Haynes, Jr., District Judge.

Argued: April 17, 2007

Decided and Filed: May 22, 2007

Before: MERRITT and GRIFFIN, Circuit Judges; LAWSON, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Allison L. Bussell, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellants. Dennis J. DeCaro, KUPETS & DECARO, Chicago, Illinois, for Appellee. **ON BRIEF:** Allison L. Bussell, Lora Barkenbus Fox, Jennifer L. Bozeman, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellants. Dennis J. DeCaro, KUPETS & DECARO, Chicago, Illinois, Culwell Edwards Ward, WARD, DERRYBERRY & THOMPSON, Nashville, Tennessee, for Appellee.

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

———————————

**OPINION**

———————————

MERRITT, Circuit Judge.  In this wrongful death action, five individual defendants were sued in their individual capacities — all of whom were firefighters, paramedics and emergency medical technicians employed by the Metropolitan Government of Nashville, Tennessee — and they now appeal the district court's order denying their motion to dismiss the plaintiff's § 1983 complaint on the basis of "qualified immunity."  We review the order on the pleadings *de novo*.  The plaintiff, who is decedent's next of kin, alleges that the defendants violated decedent Frederico Becerra, Jr.'s Fourth Amendment rights in the course of administering requested medical aid during an ongoing epileptic seizure.  Specifically, the plaintiff claims that defendants, who were answering a 911 call, used excessive force in restraining Becerra and refused him appropriate medical attention when he was in an unconscious epileptic state.  Becerra had, according to the complaint, "fallen next to the home's refrigerator" where his "grandmother was unable to lift her grandson to his feet."

We find no case authority holding that paramedics answering a 911 emergency request for help engage in a Fourth Amendment "seizure" of the person when restraining the person while trying to render aid.  Hence there is no "clearly established law" creating federal liability for a constitutional tort under these circumstances.  The district court, therefore, erred in failing to grant qualified immunity to the paramedics.

We analyze claims of qualified immunity in these circumstances using a three-prong test:

First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred.

Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.

Third, we determined whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).  The plaintiff's case fails under all three of these prongs.

**I.  Facts As Alleged in Complaint**

On July 15, 2004, at approximately 9:00 p.m., decedent Becerra's grandmother called 911 requesting medical attention for Becerra, who she reported was experiencing an epileptic seizure.  The defendants responded to the call and briefly discussed  Becerra's history of epilepsy with his grandmother.  They then restrained Becerra "by using their bodies to apply weight and pressure to [Becerra's] head, neck, shoulders, arms, torso and legs in an attempt to prevent the decedent from moving."  J.A. 10.  In a further effort to restrain Becerra and protect themselves, they tied his hands and ankles behind his back and continued to apply pressure to Becerra while he was in a prone position.  Defendants did not take any precautions to ensure that Becerra had a clear passage to breathe, and shortly after being restrained in this matter, Becerra died.  There is no claim that defendants, or any of them, acted purposely to harm Becerra, but the claim is that they acted negligently or with "deliberate indifference."

The plaintiff, Becerra's personal representative, has brought a seven-count complaint alleging that defendants violated Becerra's Fourth and Fourteenth Amendment rights.  Four of these

counts are now before us: (1) exercising excessive force; (2) failing to provide medical attention; (3) conspiring to deprive Becerra of his Constitutional rights; and (4) failing to protect Becerra from the other emergency actions. The defendants filed a Rule 12(b)(6) motion to dismiss the claims on the grounds that the plaintiff had failed to state a claim and alternatively, that they were entitled to qualified immunity. In a brief order, the District Court denied defendant's motions to dismiss holding that the plaintiff had stated a viable claim and that the defendants are not entitled to qualified immunity because the rights at issue "are clearly established." J.A. 23-24. We do not agree.

## II. Qualified Immunity

In the vast majority of these Fourth Amendment cases, courts analyze the conduct of police officers toward persons they have arrested or otherwise detained, but courts have held that the protection extends to actions by other government officials. *E.g.*, *Michigan v. Tyler*, 436 U.S. 499, 506 (1978) (holding that the Fourth Amendment applied to firefighters investigating the cause of a fire); *Doe v. Heck*, 327 F.3d 492, 510 (7th Cir. 2003) (applying the Fourth Amendment to a child welfare caseworker who, accompanied by a police officer, removed a child from class to question him about circumstances in his home). But there are no cases applying the Fourth Amendment to paramedics coming to the aid of an unconscious individual as a result of a 911 call by a family member. The result must turn on the specific purpose and the particular nature of the conduct alleged in the complaint. The question whether a seizure has occurred within the meaning of the Fourth Amendment is an objective one. *Brigham City, Utah v. Stuart*, 126 S. Ct. 1943, 1948 (2006). The various definitions of "seizure" contained in the precedents connote an intentional interference with a person's liberty by physical force or a show of authority that would cause a reasonable person consciously to submit. *See Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (holding that "a Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied") (citing *Brower v. County of Inyo*, 489 U.S. 593, 596-597 (1989)); *United States v. Jacobsen*, 466 U.S. 109, 114 n.5 (1984) (referencing the Court's "oft-repeated definition of the 'seizure' of a person within the meaning of the Fourth Amendment — meaningful interference, however brief, with an individual's freedom of movement"); *Bennett v. City of Eastpointe*, 410 F.3d 810, 833 (6th Cir. 2005) ("This rationale comports with *California v. Hodari D.*, 499 U.S. 621, 626 (1991), which held that a Fourth Amendment seizure occurs when there is (1) a show of authority, and (2) submission to a show of authority."); *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004) (holding that an "[u]nlawful seizure occurs when an officer, without reasonable suspicion, 'by means of physical force or show of authority . . . in some way restrain[s] the liberty of a citizen.' *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). One's liberty is restrained when a reasonable person would not feel free to walk away and ignore the officer's request"). The plaintiff did not allege any of these components in her complaint, nor is it likely that she could since Becerra was unconscious at the time of his encounter with the defendants and could not perceive any restraint on his liberty or otherwise feel compelled to submit to a governmental show of force. Finally, where the purpose is to render solicited aid in an emergency rather than to enforce the law, punish, deter, or incarcerate, there is no federal case authority creating a constitutional liability for the negligence, deliberate indifference, and incompetence alleged in the instant case. The Eighth Amendment "Cruel and Unusual Punishment" Clause raising a "deliberate indifference" standard does not apply here because Becerra was not incarcerated and the purpose of the alleged wrong was not punishment.

Plaintiff cites a recent Second Circuit case where a non-verbal individual who could communicate by blinking his eyes and using a computer was brought to the hospital by emergency medical workers even though he communicated that he did not want to receive any further treatment. *Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006). In the course of transporting the wheelchair-bound plaintiff, who suffered from Lou Gehrig's disease, to the hospital, the paramedics allegedly inflicted numerous bruises and lacerations on the victim by callously transporting him down several

flights of stairs in his apartment building. The Second Circuit held that this conduct constituted a clearly established "seizure" of the person under the Fourth Amendment, *i.e.*: for a government official knowingly to transport a competent adult for medical treatment over his announced objection unless the person was a danger to himself or others. Thus, the Court denied the motion for qualified immunity and remanded the case for trial on whether or not the force used to seize and transport the plaintiff was unreasonable. Unlike the instant case, the individual in the *Green* case was conscious and competent and objected to being taken into custody.

The conclusion reached by the Second Circuit is consistent with the case law from this Circuit. In *Champion v. Outlook Nashville*, this Court held that the Fourth Amendment rights of Champion, a non-verbal, autistic adult, were violated and the defendant police officers were not entitled to qualified immunity where the officers restrained the man in a manner similar to the restraint techniques used by paramedics in this case. 380 F.3d 893 (6th Cir. 2004). The officers were summoned to a shopping center parking lot by the man's caregiver after he became agitated and violent with her. The first police officer on the scene used pepper spray to subdue the man when he would not respond to her commands that he stop approaching her. When a second officer arrived, the two officers attempted to arrest Champion and take him into custody in a nearby store.

A struggle ensued and Champion was eventually tackled and handcuffed after a third officer arrived on the scene. The three officers also bound Champion's ankles with a "hobble device" to prevent him from kicking them. During and after the handcuffing and "hobbling," Champion was on the ground in a prone position and the officers applied their body weight to his back to control his movements. After several minutes, Champion began to vomit. He died shortly thereafter. The Court held that Champion's arrest and restraint by police constituted a clearly established unreasonable seizure under the Fourth Amendment and denied the police officers' argument that they were entitled to qualified immunity. *Id*. at 901-902.

The Champion case does not support the plaintiff's argument that paramedics violated Becerra's Fourth Amendment rights. The paramedics did not unreasonably seize him for the purpose of interfering with his liberty. They responded to Becerra's grandmother's call that he was experiencing an epileptic seizure and needed medical attention. They were not acting to enforce the law, deter or incarcerate. They are unlike the police officers in *Champion* who handcuffed and shackled the plaintiff in order to arrest and incapacitate him. The cases are not the same because the paramedics acted in order provide medical aid to Becerra. They were attempting to help him, although they badly botched the job according to the complaint.

Since Becerra was neither communicative, nor conscious and the paramedics were attempting to render aid, neither *Green* nor *Champion* applies. The plaintiff does not allege that either Becerra or his grandmother asked the paramedics to refrain from treating him. The plaintiff's excessive force claim thus looks like a medical malpractice claim rather than a Fourth Amendment or Due Process violation. Assuming arguendo that the restraint techniques used by the EMT's were excessive or medically unreasonable, the plaintiff may be entitled to recovery under the state law of negligence, but improper medical treatment by a government employee, standing alone, does not violate the Fourth or Fourteenth Amendment. As the Supreme Court observed in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 202 (1989):

> It may well be that, by voluntarily undertaking to protect Joshua against a danger it concededly played no part in creating, the State acquired a duty under state tort law to provide him with adequate protection against that danger. See Restatement (Second) of Torts § 323 (1965) (one who undertakes to render services to another may in some circumstances be held liable for doing so in a negligent fashion); see generally W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 56 (5th ed. 1984) (discussing "special relationships"

which give rise to affirmative duties to act under the common law of tort). But the claim here is based on the Due Process clause of the fourteenth Amendment, which, as we have said many times, does not transform every tort committed by a state actor into a constitutional violation. See *Daniels v. Williams*, 474 U.S., at 335-336; *Parratt v. Taylor*, 451 U.S. at 544; *Martinez v. California*, 444 U.S. 277, 285 (1980): *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Paul v. Davis*, 424 U.S. 693, 701 (1976). A State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes.

The plaintiff also alleges that the defendants unconstitutionally failed to render medical treatment to Becerra. The complaint argues that this failure violated the Fourth Amendment protection against unreasonable seizure and the Fourteenth Amendment guarantee of substantive due process. J.A. 13-14.

Generally, "it is not a constitutional violation for a state actor to render incompetent medical advice or fail to rescue those in need." *Jackson v. Schutlz*, 429 F.3d 586, 590 (6th Cir. 2005) (citing *DeShaney v. Winnebago County Dep't of Soc. Services*, 489 U.S. 189, 196 (1989)). There are two exceptions to this rule, instances where the state is obligated to aid or protect an individual from further danger: 1) the custody exception and 2) the state created danger exception. *Jackson*, 429 F.3d at 590-91.

The custody exception imposes on state officials a "constitutional duty to provide adequate medical care to incarcerated prisoners . . . and those under similar restraint of personal liberty." *Id*. The court in *Jackson* held that a constitutional duty was not triggered where paramedics placed an individual wounded by a gunshot into their ambulance and began transporting him to the hospital. The District Court had held that moving an unconscious patient into the ambulance constituted custody, but we held that "the concept of custody does not extend this far." *Id*. The facts in the present case similarly fail to allege that Becerra was taken into custody. He was restrained while he was unconscious, and the defendants' actions were undertaken in an effort to render medical treatment. This is easily distinguished from the archetypical custody exception case where jail or prison officials fail to provide medical treatment to an incarcerated individual.

The state-created danger exception applies where the state causes or greatly increases the risk of harm to its citizens without due process of law through its own affirmative acts. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). To establish liability under this theory, a plaintiff must show: (1) affirmative acts by the state that "create or increase the risk that an individual will be exposed to private acts of violence;" (2) that the state's actions placed the victim "specifically at risk, as distinguished from a risk that affects the public at large;" and (3) that the state knew or "clearly should have known that its actions specifically endangered an individual." *Id.* This exception does not apply here because the defendant's actions did not expose Becerra to private acts of violence as required by the first prong. We see no basis at all in this case on which plaintiff can recover for a federal constitutional tort, and accordingly we reverse the judgment below and remand with instructions to grant qualified immunity to the individual defendants and for other relief not inconsistent with this opinion.