**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0282n.06

No. 13-3274

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Apr 15, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| BENNIE OVERTON, | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | **AMENDED** |
| | ) | **OPINION** |

BEFORE: DAUGHTREY, SUTTON, and DONALD, Circuit Judges.

**BERNICE B. DONALD, Circuit Judge.** Defendant-Appellant, Bennie Overton, appeals his conviction and sentence for one count of carjacking, 18 U.S.C. § 2119, one count of using, carrying, or brandishing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c), and one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g). On appeal, Overton contends that the district court (1) deprived him of his right to present a defense, (2) improperly admitted a hearsay statement as an excited utterance, (3) improperly allowed the Government to introduce into evidence a .45 caliber pistol, (4) improperly denied his motion to suppress, (5) improperly instructed the jury as to the elements of carjacking and brandishing a firearm in relation to a violent felony, and (6) imposed a procedurally unreasonable sentence. Because all of Overton's arguments lack merit, we **AFFIRM** the judgment of the district court.

## I. Background

Sometime after two o'clock in the morning on April 29, 2012, Anthony Gore was sitting in his 2004 Nissan Maxima with the car door open waiting on a friend, Gerald Paschal, to pick him up. The defendant, Bennie Overton, approached Gore asking to borrow a cigarette lighter. After Gore told Overton that he did not have a cigarette lighter, Overton became more aggressive, walked closer to the car, and eventually pulled what appeared to be a firearm from his jacket. Gore testified that Overton then placed the firearm to his temple and ordered him to move to the passenger side of the car. Gore complied with Overton's commands, and Overton sat in the driver's seat with the muzzle of the firearm touching Gore's side.

Once Gore was in the passenger seat and Overton in the driver's seat, Overton demanded that Gore give Overton his keys and phone. Gore attempted to stall, hoping that Paschal would arrive to pick him up, but Overton became even more aggressive. In response, Gore surrendered his phone and keys. Gore testified that he remembered his passenger door was unlocked during the confrontation. Fearing that Overton might kidnap or shoot him if he did not get away immediately, Gore opened the passenger door and ran away as fast as he could. Overton drove away in Gore's Nissan, traveling in the opposite direction.

Shortly thereafter, Gore's friend Paschal arrived to pick him up. Paschal testified that Gore was running across the street when the two met, as well as that Gore was "kind of frantic and stuttering" when he got into the car. As Paschal was trying to ascertain what had happened to his friend, Gore made two statements to Paschal: "I just got robbed. Take me to the police department" and "Man, he put a gun to my head man." Paschal then took Gore to the police department to file a report.

Five days later, on May 4, 2012, Cincinnati Fire Department personnel ("EMS personnel") received a 911 call for emergency medical assistance, relating to a "reported unconscious person in a vehicle at the gas pumps" of a gas station on Gilbert Avenue. Upon arriving at the gas station, the EMS personnel saw their patient (later identified as Overton) leaning back in the driver's seat of a silver sedan (later identified as Gore's 2004 Nissan Maxima). The patient was "in the driver's seat, eyes closed, unresponsive, the doors closed." After blowing the fire truck's air horn and administering ammonia inhalants in unsuccessful attempts to rouse Overton, the EMS personnel employed a sternum rub technique to wake him.

Upon waking, Overton seemed confused and disoriented and grabbed the shirt of the firefighter who administered the sternum rub. While the EMS personnel were talking to Overton and attempting to ascertain his condition, he shifted his legs in his seat and exposed the handle of a .45 caliber pistol. At this point, the EMS personnel began to get nervous for their safety and the safety of those around them. They accordingly removed Overton from the car and secured the pistol.

On June 6, 2012, a grand jury indicted Overton for the following crimes: one count of carjacking, one count of using, carrying, or brandishing a firearm in furtherance of a crime of violence, and one count of being a felon in possession of a firearm. Overton filed a motion to suppress the pistol discovered by the EMS personnel, which the district court denied after an evidentiary hearing. Overton then pled guilty to the felon in possession of a firearm count on August 13, 2012, but proceeded to a jury trial on the carjacking and brandishing offenses. The trial took place over three days in August of 2012, and the jury returned guilty verdicts on both remaining counts. The district court then sentenced Overton to a within-Guidelines term of 199

months' imprisonment, five years of supervised release, a $1,000 fine, and the forfeiture of various items. Overton filed a Notice of Appeal the day after the district court entered judgment, and this appeal followed.

## II. Right to Present a Defense

Overton first argues that the district court denied his constitutional right to present a defense. The defense's theory of the case was that Overton used a BB gun, rather than an actual firearm, when he forced the victim, Gore, from his car. During Overton's cross-examination, the Government asked him about the location of the BB gun. The BB gun was one of several items of evidence seized from Overton's residence that the parties had agreed not to use at trial. In response, Overton's counsel attempted to introduce a photograph of the BB gun that he received from the Government during discovery in order to prevent the jury from drawing the inference that Overton lied. The district court ruled that allowing Overton to introduce a picture of the BB gun would open the door for the Government to introduce evidence of the other items seized from his residence. Overton alleges that this ruling deprived him of his right to present a defense.

The parties dispute the standard of review that should apply to the district court's ruling. Overton argues for de novo review, while the Government asserts that abuse of discretion is the proper standard. The Government is correct that "we review all challenges to district court evidentiary rulings, including constitutional challenges, under the abuse of discretion standard." *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006). But "the abuse of discretion standard is not at odds with *de novo* interpretation of the Constitution inasmuch as [a] district court does not have the discretion to rest its evidentiary decision on incorrect interpretations of

the Constitution." *Id.* (citing *United States v. Baker*, 458 F.3d 513, 516 (6th Cir. 2006); *United States v. Johnson*, 440 F.3d 832, 842 (6th Cir. 2006)). "A district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Schlaud v. Snyder*, 717 F.3d 451, 457 (6th Cir. 2013) (quoting *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 351 (6th Cir. 2011)) (internal quotation marks omitted).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). The Supreme Court has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citing *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). Accordingly, even if the district court erroneously excluded evidence, we will reverse only if "the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist." *Blackwell*, 459 F.3d at 753 (brackets in original) (quoting *Washington v. Schriver*, 255 F.3d 45, 57 (2d Cir. 2001)) (internal quotation marks omitted).

Overton cannot overcome this burden because the parties negated the impact of any error the district court may have made with respect to the evidentiary ruling by entering into a stipulation. The stipulation stated, "A black BB gun pistol was recovered from Mr. Overton's apartment." Overton's counsel only sought to introduce the photograph of the BB gun to negate

a possible inference by the jury that Overton lied about the Government's possession of the BB gun. Even assuming that the lack of any defense evidence on this point could have created reasonable doubt where it did not otherwise exist, *Blackwell*, 459 F.3d at 753, the parties' stipulation served the same purpose as the photograph. Following the district court's reading of the stipulation, the jury had no basis to infer that Overton lied about this issue during his testimony. We therefore cannot say that the district court's evidentiary ruling deprived Overton of his constitutional right to present a defense.

## III. Admission of the Hearsay Statement

Overton next argues that the district court, through the testimony of witness Paschal, erroneously admitted into evidence as an excited utterance Gore's hearsay statement, "Man, he put a gun to my head man." Federal Rule of Evidence ("FRE") 803 enumerates exceptions to the rule against hearsay regardless of whether the declarant is available as a witness. Fed. R. Evid. 803. FRE 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). The district court found that Gore's statement met this standard, making Paschal's recitation of the statement admissible.

We review the district court's evidentiary ruling for abuse of discretion. *Blackwell*, 459 F.3d at 752. Even if the district court abused its discretion, however, we will reverse a guilty verdict due to the erroneous admission of hearsay evidence only if the error affects the defendant's substantial rights. *See United States v. Beverly*, 369 F.3d 516, 540 (6th Cir. 2004) (citing *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993)).

We have established three requirements that a statement must meet to qualify as an excited utterance under FRE 803(2): "First, there must be an event startling enough to cause nervous excitement. Second, the statement must be made before there is time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of the excitement caused by the event." *United States v. Davis*, 577 F.3d 660, 669 (6th Cir. 2009) (quoting *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983)) (internal quotation marks omitted).

The record indicates that Gore's statement to Paschal meets the first and third requirements for an excited utterance. Gore experienced "an event startling enough to cause nervous excitement," Fed. R. Evid. 803(2), because Overton forced Gore from his car with what appeared to Gore to be a loaded weapon. *Cf. United States v. Arnold*, 486 F.3d 177, 184 (6th Cir. 2007) (en banc) ("As to the first requirement, being threatened by a convicted murderer wielding a semi-automatic handgun amounts to a startling event that would prompt at least nervous excitement in the average individual, if not outright trauma."). Gore was still "under the stress of the excitement caused by the event," Fed. R. Evid. 803(2), because he was "shocked" and still "frantic and stuttering" when Paschal picked him up in the middle of the road following the event. *Cf. Arnold*, 486 F.3d at 184 ("Throughout the call, the operator had to tell [the declarant] to 'calm down' and 'quit yelling' and often had difficulty understanding her frantic pleas for help.").

Overton alleges that Gore's statement was not "made before there [was] time to contrive or misrepresent," *Davis*, 577 F.3d at 669, because it was made after the carjacking was over. This argument is without merit. Our precedents do not require a declarant to make a statement

*during* the course of a startling event. *Arnold*, 486 F.3d at 185 ("[O]ur cases do not demand a precise showing of the lapse of time between the startling event and the out-of-court statement."). Instead, we only require "[t]estimony that the declarant still appeared 'nervous' or 'distraught' and that there was a reasonable basis for continuing [to be] emotional[ly] upset." *Haggins*, 715 F.2d at 1058 (quoting McCormick's Handbook of the Law of Evidence § 297 at 705-06 (2d ed. 1972)); *see also United States v. McCullough*, 150 F. App'x 507, 510 (6th Cir. 2005) (applying the excited utterance exception to statement made "not . . . longer than two-and-a-half hours" after startling event). Paschal and Gore both testified that Gore was still nervous and distraught following the theft of his car. There was therefore a reasonable basis for admitting Gore's statement, and the district court properly overruled Overton's hearsay objection to Paschal's recitation of Gore's statement.

## IV.  Admission of the Firearm

Overton next argues that the district court erred when it allowed the Government to introduce into evidence the .45 caliber pistol recovered from Gore's stolen car on May 4, 2012. Overton alleges that the .45 caliber pistol was irrelevant under FRE 401, excludable under the FRE 403 balancing test as unfairly prejudicial, and excludable under FRE 404(b), which deals with evidence of other crimes. *See* Fed. R. Evid. 401, 403, 404(b). We review the FRE 401 and 403 issues for abuse of discretion. *Blackwell*, 459 F.3d at 752. Because Overton raises the FRE 404(b) issue for the first time on appeal, we review it for plain error. *United States v. Aguirre*, 605 F3d 351, 356 (6th Cir. 2010).

FRE 401 provides: "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in

determining the action." Fed. R. Evid. 401. The pistol's presence in Gore's stolen car tends to make it more probable that Overton took Gore's car with the conditional intent to kill or cause serious bodily harm, an element of the carjacking offense charged in count one of the indictment. The pistol's presence also tends to make it more probable that Overton brandished a firearm during the commission of the carjacking offense, an element of the brandishing offense charged in count two of the indictment. Accordingly, the district court did not abuse its discretion when it found that the pistol was relevant evidence.

FRE 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Overton argues that the danger of unfair prejudice substantially outweighed the probative value of the .45 caliber pistol. As discussed above, however, the probative value of the pistol was high; it was relevant to elements of both counts of the indictment on which Overton went to trial. Overton's counsel objected to the introduction of the pistol at trial on the following basis: "[T]here is not [sic] evidence to tie its use to the robbery." The district court overruled that objection because "it is probative in terms of the overall offense, and it's relevant and material." Accordingly, the district court did not abuse its discretion when it found that the probative value of the pistol was not substantially outweighed by the danger of unfair prejudice.

FRE 404(b) provides:

(b) Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b). This rule prohibits the use of "propensity evidence" to show that a defendant acted in conformity with any particular character trait on a specific occasion. *Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013). The Government, however, did not introduce the pistol into evidence to prove that Overton acted in accordance with his character. Rather, the Government introduced the pistol because it established an element of both offenses charged in the indictment for which Overton was on trial. *Id.* ("Rule 404(b) does not apply to evidence that is 'intrinsic to' or 'inextricably intertwined with evidence of' the central alleged wrong."). The district court therefore did not commit plain error by failing to exclude the .45 caliber pistol as improper FRE 404(b) evidence.

## V. Denial of the Motion to Suppress

Overton next argues that the district court erred when it denied his motion to suppress the .45 caliber pistol, finding, among other things, that Overton lacked standing to challenge the search of Gore's sedan because he had no legitimate expectation of privacy in the stolen vehicle. When reviewing the denial of a motion to suppress, "[w]e consider the evidence in the light most

favorable to the [Government] and review factual findings for clear error." *United States v. Young*, 707 F.3d 598, 602 (6th Cir. 2012). A factual finding is clearly erroneous when, "although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010)) (internal quotation marks omitted). This Court also "reviews the evidence in the light most likely to support the district court's conclusion." *United States v. Galaviz*, 645 F.3d 347, 352 (6th Cir. 2011) (quoting *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009)) (internal quotation marks omitted).

Here, the district court correctly concluded that Overton lacked standing to challenge the search of Gore's vehicle. Under this Court's decision in *United States v. Hensel*, 672 F.2d 578 (6th Cir. 1992), a person who knowingly possesses a stolen vehicle has no legitimate expectation of privacy therein. *Id.* at 579. Because Overton stipulated at the suppression hearing that the vehicle was stolen, he lacks standing to challenge the search of it. *Id.*

Overton contends, however, that the EMS personnel unreasonably seized his person in violation of the Fourth Amendment when they would not allow him to leave for twenty to thirty seconds after he said that he was fine. There is support for this argument in the record given that one of the firefighters testified at the suppression hearing that, even before they saw the pistol, they would not have allowed Overton to leave for fear that his health was in jeopardy. As the Supreme Court repeatedly has held, a person is seized for Fourth Amendment purposes when a reasonable person in his circumstances would not feel free to leave. *E.g.*, *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) ("[T]he police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would

have believed that he was not free to leave.'" (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (plurality opinion))); *Terry v. Ohio*, 392 U.S. 1, 19 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.").

Even assuming the EMS personnel seized Overton, however, the inquiry under the Fourth Amendment is not merely whether a seizure has occurred; it is whether, provided there has been a seizure, that seizure was *unreasonable*. *Maryland v. Buie*, 494 U.S. 325, 331 (1990) ("It goes without saying that the Fourth Amendment bars only unreasonable searches and seizures[.]"). Viewing the evidence in the light most favorable to the Government, we conclude that Overton's seizure was reasonable. As the transcript of the suppression hearing reflects, EMS personnel detained Overton, who was unconscious when they arrived on the scene, in order to render medical aid. They did not seek to arrest or incapacitate Overton. Overton's detention lasting for twenty to thirty seconds after he said he was fine accordingly does not amount to an unreasonable seizure. *See Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 222 (6th Cir. 2007) (finding no Fourth Amendment violation where paramedics merely responded to a medical emergency and "were not acting to enforce the law, deter or incarcerate"). The district court therefore did not err when it denied Overton's motion to suppress the .45 caliber pistol, which came into the EMS personnel's plain view during Overton's detention.

VI.  Jury Instructions

A.  Carjacking

Overton next argues that the district court's instructions to the jury on the third and fourth elements of the carjacking offense require reversal because they were confusing and did not accurately state the law.  We typically review a challenge to the district court's jury instructions for abuse of discretion.  *United States v. Kelsor*, 665 F.3d 684, 695 (6th Cir. 2011).  Under the abuse of discretion standard, we will reverse "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial."  *Kelsor*, 665 F.3d at 695 (quoting *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999)) (internal quotation marks omitted).  The defendant must suffer actual prejudice before reversal is required.  *Id.*

When the defendant fails to make a specific objection to a proposed instruction, however, our review is for plain error.  *United States v. Semrau*, 693 F.3d 510, 526-27 (citing Fed. R. Crim. P. 30(d)).  Because Overton's counsel failed to make a specific objection to the district court's instruction on the third element of carjacking, we review that portion of the instructions for plain error.  Under the plain error standard, we will reverse only if the district court abused its discretion and "the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings."  *Semrau*, 693 F.3d at 528 (quoting *United States v. Aaron*, 590 F.3d 405, 408 (6th Cir. 2009)) (internal quotation marks omitted).

On appeal, Overton objects to the following portion of the district court's instruction on the third element of carjacking:  "The government does not have to prove that the defendant's behavior caused or could have caused terror or panic, but it must show that an ordinary person would have feared bodily harm because of the defendant's behavior."  Overton argues that this

instruction is an incorrect statement of the law and that it altered the *mens rea* element of the offense. This argument is without merit in light of the fact that Overton's counsel submitted the exact same language to the district court as a proposed instruction. Even assuming Overton could show an abuse of discretion in these instructions, he cannot demonstrate that any error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Semrau*, 693 F.3d at 528 (quoting *Aaron*, 590 F.3d at 408) (internal quotation marks omitted). The district court's instruction on the third element of the carjacking offense accordingly was not plain error.

As to the fourth element of carjacking, Overton objects to the following portion of the district court's instruction: "The requisite intent can be shown by evidence of an intent to use a knife, a baseball bat, brute force, or any other means that indicates an ability and willingness to cause serious bodily harm or death if not obeyed." Overton attempts to classify this language as the Government's legal theory, and he claims there is no evidence in the record to support such a theory. This argument is likewise without merit. The district court's instruction parallels nearly word-for-word the language this Court used in *United States v. Fekete*, 535 F.3d 471, 480 (6th Cir. 2008) ("The requisite *mens rea* can be shown by evidence of an intent to use a knife, a baseball bat, brute force, or any other means that indicates an ability and willingness to cause serious bodily harm or death if not obeyed."). This instruction properly stated the law and could not have confused the jury because the context of the instructions as a whole reveals that knife, bat, and brute force are simply examples to aid the jury in understanding what constitutes conditional intent to kill or cause serious bodily harm. The district court's instruction on the fourth element of the carjacking offense therefore was not an abuse of discretion.

## B.  Section 924(c) Brandishing

In a Federal Rule of Appellate Procedure 28(j) letter, Overton raises an additional argument in favor of remand.  He contends that, under the Supreme Court's intervening decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the district court violated his Sixth Amendment rights when it failed to instruct the jury on the "brandishing" element of his § 924 offense but still imposed the seven-year mandatory minimum sentence that such an offense triggers.  *See* 18 U.S.C. § 924(c)(1)(A)(i)-(ii) (imposing a five-year mandatory minimum for using or carrying a firearm in relation to a crime of violence and a seven-year mandatory minimum for brandishing in the same context).  Because Overton did not raise this challenge at sentencing, we likewise review it for plain error.  *United States v. Mack*, 729 F.3d 594, 607 (6th Cir. 2013).

On plain error review in this context, "[w]e may consider relief for an error not raised below only if we find (1) error, (2) that is 'plain,' and (3) that affects the substantial rights of the defendant."  *Id.*  If a claim meets all three of these requirements, "then we may exercise our discretion to notice the forfeited error, but only if we find the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings."  *Id.*

In order to determine whether the error affected Overton's substantial rights, we "ask whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *Id.* at 607-08 (quoting *Neder v. United States*, 527 U.S. 1, 15 (1999)) (internal quotation marks omitted).  "If it is clear to us beyond a reasonable doubt that the outcome would not have been different even if the district court had instructed the jury on the

element of brandishing and required the jury to make a finding on that element, then harmless error occurred." *Id.* at 608.

In *Alleyne*, the Supreme Court held that, in order to protect criminal defendants' Sixth Amendment rights, "[f]acts that increase the mandatory minimum sentence are . . . elements [of the crime charged] and must be submitted to the jury and found beyond a reasonable doubt." 133 S. Ct. at 2158. Alleyne's indictment charged him only with using or carrying a firearm in relation to a crime of violence under § 924(c), and the district court instructed the jury only on using and carrying—which would have subjected him to the five-year mandatory minimum in § 924(c)(1)(A)(i). *Id.* at 2155-56. But the district court made a finding at sentencing that Alleyne brandished a firearm and accordingly sentenced him to the seven-year mandatory minimum found in § 924(c)(1)(A)(ii). *Id.* at 2156. The Supreme Court held this action violated the Sixth Amendment and remanded Alleyne's case for resentencing. *Id.* at 2158.

Assuming that the district court committed an error and that error was plain, Overton cannot satisfy the third requirement for plain error review. *See Mack*, 729 F.3d at 607-09. Unlike the indictment in *Alleyne*, Overton's indictment explicitly charged him with knowingly using, carrying and brandishing a firearm. Furthermore, undisputed evidence at trial establishes that Overton brandished a firearm within the meaning of § 924(c). Section 924(c)(4) defines "brandish" as "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." Gore and Paschal testified that Overton placed a firearm against the side of Gore's head during the carjacking. Furthermore, even Overton testified that he pulled up his shirt to expose the gun he was carrying in order to scare Gore. All of this evidence

satisfies us that, had the district court instructed it properly on the element of brandishing, the jury would have found Overton guilty of that element beyond a reasonable doubt. *See id.* at 609. Any error under *Alleyne* was therefore harmless because it did not affect Overton's substantial rights.

## VII. Procedural Reasonableness of Sentence

Finally, Overton argues that the district court committed procedural error at his sentencing by failing to address one of his objections and by failing to make proper findings under 18 U.S.C. § 3553(a). Because Overton did not raise these procedural objections in the district court, we review his sentencing challenge for plain error. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) ("If a sentencing judge asks [whether the parties have objections to the sentence] and if the relevant party does not object, then plain-error review applies on appeal to those arguments not preserved in the district court." (citing *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004))). Plain error review in this context requires Overton to show: "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights, and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *Id.* (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

A district court commits procedural error during sentencing when it "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51. Additionally, "[w]hen the defendant or prosecutor 'presents nonfrivolous reasons for imposing a different sentence,' . . . a sentencing judge should address the 'parties' arguments' and 'explain why he

has rejected those arguments.'" *United States v. Peters*, 512 F.3d 787, 789 (6th Cir. 2008) (citing *Rita v. United States*, 551 U.S. 338, 357 (2007)).

Here, the district court found that the firearms located in Overton's apartment were relevant to the charge of felon in possession of a firearm but irrelevant to the remaining charges. Overton argued at sentencing that this was inconsistent.[1] On appeal, Overton alleges that the district court "wholly failed to address Overton's inconsistencies argument." Appellant Br. at 30. This statement misrepresents the record, and the sentencing transcript plainly contradicts it. After Overton's counsel objected based on inconsistency, the Government responded with its argument in favor of considering the firearms relevant conduct to count three of the indictment. Overton's counsel made a final argument that the firearm possessions occurred in separate locations at separate times, and then the district court ruled on the objection: "It doesn't make any difference. They are still firearms in the possession of a felon. Well, anyway, I'm going to overrule the objection." Because the district court addressed Overton's argument and explained its reasons for overruling the objection, the lower court did commit any plain procedural error on this point.

The sentencing transcript similarly contradicts Overton's assertion that the district court did not consider the 18 U.S.C. § 3553(a) factors.[2] The district court explicitly mentioned the

---

[1] Despite the fact that Overton's counsel raised this objection at sentencing, our review is for plain error. As required by our decision in *Bostic*, 371 F.3d 865, 872-73, the district court asked at the conclusion of the sentencing hearing whether the parties had any objections to the sentence. Overton's counsel failed to object to the district court's alleged failure to rule on his previous objection. Accordingly, plain error review applies on appeal. *See Vonner*, 516 F.3d at 385.

[2] The factors contained in § 3553(a) are as follows: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence

defendant's history and characteristics, the particulars of the offense, the victim, promoting respect for the law, and deterrence. Although this discussion of the § 3553(a) factors was not perfect, we do not require district courts to conduct a "ritual incantation" of the factors. *United States v. Phillips*, 516 F.3d 479, 488 (6th Cir. 2008). Furthermore, "[a] less lengthy explanation will suffice for a within-Guidelines sentence when 'the record makes clear that the sentencing judge considered the [defendant's] evidence and arguments.'" *United States v. Lapsins*, 570 F.3d 758, 774 (6th Cir. 2009) (second alteration in original) (quoting *Rita*, 551 U.S. at 359). Because the district court did in fact discuss the § 3553(a) factors while handing down a within-Guidelines sentence, it did not commit any plain procedural error on this point.

## VIII.  Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct, to protect the public from further crimes committed by the defendant, and to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the sentencing range established by the guidelines; (5) any relevant policy statement from the Sentencing Commission; (6) the need to avoid unwarranted disparities in sentencing among similarly situated offenders; and (7) the need to provide restitution to the victim of the offense.